IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT T. ALMY, on behalf of himself and all other persons similarly situated known and unknown, )))) | |
| ) | Case No. 08 CV 2902 |
| Plaintiff, ) | |
| ) | Judge: Robert E. Dow Jr. |
| v. ) | |
| ) | Mag. Judge: Morton Denlow |
| KICKERT SCHOOL BUS LINE, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.  STATEMENT OF THE CASE:**

Robert Almy, a school bus driver employed by Kickert, filed a three count complaint in this matter.  Count I of the complaint is a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA), "for Defendant's failure to pay overtime wages to Plaintiff and other similarly situated persons."  Including Almy, 109 Kickert current and former drivers have opted into the lawsuit.   Kickert is seeking summary judgment on Count I in support of its affirmative defense that "Plaintiffs were exempt from the overtime pay requirements of the FLSA by virtue of the Motor Carrier Act exemption in §13(b)(1) of the FLSA, 29 U.S.C. §213(b)."

Count II is an individual action by Almy alleging "violation of the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.*, for Defendant's failure to pay Plaintiff his earned overtime pay for hours worked in excess of forty (40) in individual workweeks."  Kickert seeks summary judgment on Count II in support of its affirmative defense that Almy is "exempt from the

overtime pay requirements of the IMWL by virtue of the motor carrier exemption in 820 ILCS 105/3 (d)(7)."

Count III is an individual action by Almy alleging that Kickert violated the Illinois Wage Payment and Collection Act (820 ILCS 115/9) by failing to pay him for all time he worked. This count was fleshed out in discovery where Almy stated he was not paid for certain pre-trip and post-trip working time and for "deadhead" time at the conclusion of charter trips. Kickert seeks summary judgment on Count III in support of its affirmative defense that "Plaintiff's claims are pre-empted by the National Labor Relations Act (29 U.S.C §151 *et. seq.*) and the Federal Arbitration Act (9 U.S.C . §1 *et. seq.*) insofar as they raise issues cognizant under Defendant's contract with Teamsters Local 142 and the dispute resolution procedures in that contract."

## II. SUMMARY OF FACTS[1]

Kickert is a school bus company that contracts with school districts and private parties for the transportation of school children and other passengers to and from school, to after-school events, to non-school functions and for Kickert's business activities. This transportation involves both intrastate and interstate travel.

Each of the opt in plaintiffs is or was a Kickert driver covered by a collective bargaining agreement between Kickert and Teamsters Local 142. Under that agreement and Kickert policies, every driver regularly bids on school routes and charter trips and is subject to assignments that require the crossing of state lines, particularly between Illinois and Indiana. These trips generally run to and from the Illinois terminal to and from locations in Indiana and include not only Indiana school routes but also extra-curricular school activities; transporting of senior citizens; driver testing; driver refresher courses; private party charters. The state borders also are crossed when drivers drive buses between their homes and the terminal, when traffic

---

[1] This is a summary of the material facts not in dispute as set forth in Defendant's Rule 56 statement.

conditions require rerouting and when an Illinois driver must substitute for a driver who is on an Indiana route. The parties have stipulated that lead plaintiff Robert Almy and other opt-in plaintiffs, but not all opt-in plaintiffs, have driven school and charter routes across state lines. The parties further have stipulated that all plaintiffs are similarly situated in that they are all school bus drivers, and all have been subjected to the same or substantially similar terms and conditions of employment.

The United States Department of Transportation ("DOT") administers the federal Motor Carrier Act through the Federal Motor Carrier Safety Administration ("FMCSA"). Kickert holds operating authority from FMCSA in the form of an interstate motor common carrier certificate, Number MC181194, which gives Kickert the authority to engage in transportation as a common carrier of passengers in interstate commerce. Kickert has been issued DOT Number 158777 by FMCSA evidencing its right to engage in interstate commerce subject to the FMCAS's safety regulations. Kickert's authority and required insurance filings are on public record located on the FMCSA website at http://li-public.fmcsa.dot.gov/reports/rwservlet.

DOT requires Kickert and its drivers to comply with its many regulations. More specifically, drivers are required to secure and maintain commercial drivers licenses; maintain "P" and "S" endorsements on those licenses; complete annual DOT medical forms and undergo periodic drug and alcohol testing; conduct pre-trip safety inspections of the buses; and engage with the company in record-keeping tasks. In 2007, Kickert was subjected to a DOT audit that resulted in a number of directives to take corrective action to remedy specified regulatory violations.

Until the current collective bargaining agreement with Local 142, no labor contract has required Kickert to pay an overtime premium because the parties have applied the federal and

state overtime exemptions for motor carriers. Section 11.6 of the 2005-08 contract stated: "All Employees who work in excess of (40) hours in any one week shall be paid their regular hourly rate for each hour after forty (40) hours." All subsidiaries of Cook-Illinois Corporation, Kickert's parent company, voluntarily instituted the overtime premium in order to be competitive in attracting drivers to accept employment. The Kickert overtime premium was inserted in the 2008-11 contract with Local 142.

The 2005 and 2008 collective bargaining agreements between Kickert and Teamsters Local 142 state in Section 11.5:

> **Guarantee of Minimum Hours.** The Company shall pay an Employee a guaranteed minimum of two (2) hours of work a day at the regular rate of hourly pay if that Employee is assigned to a morning route and two (2) hour guarantee for the afternoon route. Where an Employee works less actual hours than he or she is guaranteed, that Employee will receive payment for the amount of hours guaranteed to him or her by the Company. Where an Employee works more hours than he or she is guaranteed, he or she will receive payment for the amount of actual hours worked. If an employee declines any work assigned, he will not be entitled to the guarantee for that period.

The contracts further contain an exclusive grievance-arbitration procedure that states in Section 8.1:

> **Grievances.** A grievance shall be defined as a claim by an Employee, the Union or the Company that one party to this Agreement violated or is violating the provisions of a specific section or sections of this Agreement. The provisions of this Article shall set forth the sole and exclusive procedures for the adjustment of any grievance of the Employees or the Union.

Lead plaintiff Robert Almy has filed a grievance with Teamsters Local 142 concerning the pay claims he makes in Count III of the Complaint, which grievance currently is pending resolution.

**III.     ARGUMENT:**

Defendant believes it unnecessary to advise the court on summary judgment standards and states simply that there is no genuine issue as to any material fact in this matter and that it is entitled to a judgment as a matter of law.

**A.     Count I—FLSA.**   There is no dispute that Kickert would be required to pay time + one-half to its drivers under §7 of the FLSA unless those drivers are exempt under §13(b)(1) of the Act. 29 U.S.C.S. §213(b)(1). That exemption provision states:

> The provisions of section 7 shall not apply with respect to —
> (1) any employee with respect to whom the Secretary of Transportation has power
> to establish qualifications and maximum hours of service pursuant to the
> provisions of section 31502 of Title 49;

The power of the Secretary of Transportation to establish maximum hours and qualifications of service extends to those classes of employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under §204 of the Motor Carrier Act and (2) who engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act. 29 C.F.R. §782.2(a). In this regard, there is no question that drivers of passenger motor vehicles belong to the class of employees whose activities are safety related. *Id.* at §782.2(b))2). And there also can be no dispute that Kickert is a motor carrier within the meaning of §31502 of the Motor Carrier Act.[2] The issue in this case, then, can be distilled into whether Kickert's school bus drivers are subject to the Secretary's jurisdiction.

---

[2]  §31502 (14) states: **Motor carrier.—** The term "motor carrier" means a person providing commercial motor vehicle (as defined in section 31132) transportation for compensation.

There can be no dispute that the Secretary has exercised jurisdiction over Kickert's drivers as noted in Statement of Facts @¶18. Further, the lead plaintiff in this case, Robert Almy, was one of the drivers whose qualifications were reviewed by DOT in the 2007 audit. That exercise of jurisdiction is consistent with various pronouncements of the Secretary that are set forth in Appendix, Tabs 1A-1F submitted with this motion. Under these notices and guidances issued by the Secretary, the agency makes it clear that it is exercising regulatory authority over private for-hire school bus companies that contract with school districts for transportation of school children. For example, in its Guidance for Question 14, it states that anyone operating school buses under contract with a school is a for-hire motor carrier and that transportation of children to school-related functions other than between home and school must be conducted in accordance with federal safety regulations.[3] Such motor carriers must keep driver and vehicle records required by the regulations. Appendix, Tab 1D. (See also National Student Transportation Safety Initiative, Appendix, Tab 1C; Fact Sheet—Commercial Driver's License, Appendix, Tab 1B; FMCSA Proposed Exemption for School Bus Endorsement, Appendix, Tab 1E; Final Rule: Commercial Driver's License Standards; School Bus Endorsement, Appendix, Tab1F). As noted in the Statement of Facts @¶¶5-12, 24, Kickert's drivers cross state lines in transporting students between school and home and in numerous other situations. Furthermore, Kickert has DOT operating authority, which is on public record. Appendix, Tab 9.

Case law supports the applicability of the §13(b)(1) exemption to Kickert's drivers. Any such analysis must begin with the Supreme Court's decision in Morris v. McComb, 332 U.S. 422 (1947). In that case the Court held that the Interstate Commerce Commission (now DOT) had

---

[3] As noted more fully below, the Secretary has the power to regulate interstate transportation between home and school but has declined to do so at the present time.

6

the power to regulate a motor carrier's drivers where the drivers' interstate and intra-state assignments were mingled indiscriminately even though only three to four percent of its activities were in interstate commerce and not all drivers took interstate trips. "It is the character of the employee's activities rather than the proportion of either his time or of his activities that determines the actual need for the Commission's power to establish qualifications and maximum hours of service. Levinson v. Spector Motor Service, 330 U.S. 649. Pp. 431-432. *Id.* @ *Syllabus, ¶2.* "

In the instant case, it is stipulated that not all plaintiffs have driven across state lines although all drivers are subject to interstate assignments. In this respect the parties agreed in their Stipulations that all plaintiffs have been subjected to the same or substantially similar terms and conditions of employment. In Williams v. Alex's Transportation, Inc., 969 F.Supp. 1142 (N.D. Ill. 1997), this court held that the exemption is applicable to drivers if their company engages in more than *de minimus* interstate commerce and that it applies to a driver if in the regular course of his employment he is or could be called upon for an interstate assignment. The court cited Starrett v. Bruce, 391 F.2d 320 (10th Cir. 1968)(in determining whether there is a reasonable probability that a driver would be assigned to an interstate run, courts look to whether the carrier held interstate authority, advertised for interstate work, and assigned drivers indiscriminately to that work). See also Barron v. Lee Enterprises, Inc., 183 F. Supp. 2d 1077 (C.D. Ill. 2002)(even a minor involvement in interstate commerce as a regular part of an employee's duties subjects the employee to the jurisdiction of the Secretary of Transportation); Brennan v. Schwerman Trucking Co, 540 F.2d 1200, 1204 (4th Cir. 1976)(exemption applied even though drivers rarely engaged in interstate commerce because employer solicited such business, and therefore, the drivers had the potential to affect safety on the highways).

In Garcia v. Pace Suburban Bus Service, 955 F.Supp 75, 77 (N.D. Ill. 1996), the court held that the Secretary's power extends to a company that "holds itself out as an interstate company and solicits that business even though its prospect of obtaining much of that business is poor and some of its drivers never drive in interstate commerce." Although the plaintiff in Garcia had not driven an interstate trip, the court noted: (1) the employer was engaged in interstate commerce; (2) upon hiring, the employer required the employee to sign a form acknowledging that he or she may be called upon to drive for the company's interstate charter service; (3) the employer required its drivers to comply with the DOT regulations and maintain DOT forms; (4) the employer maintained vehicles in accordance with DOT regulations; and (5) DOT regularly conducted audits in which it determined that all of the employer's drivers are subject to federal safety requirements. In these respects, Kickert is very much like Pace Suburban Bus Service. See also Marshall v. Aksland, 631 F.2d 600, 603 (9th Cir. 1980) ("The jurisdiction of the Department of Transportation turns on whether a person 'holds itself out to the general public to engage in the transportation by motor vehicle in interstate and foreign commerce.' 49 U.S.C. § 303(a)(14). It does not turn on whether there exists, in addition to the required 'holding out,' a reasonable prospect of getting interstate or foreign business. See Morris v. McComb, 332 U.S. 422, 68 S. Ct. 131, 92 L. Ed. 44 (1947).")

Defendant expects plaintiffs to rely on Mielke v. Laidlaw Transit, Inc., 102 F.Supp.2d 988(N.D. Ill. 2000) for the proposition that school bus drivers are not exempt because Congress removed them from DOT jurisdiction. The Mielke case involves school bus drivers much like the Kickert drivers and is not factually distinguishable. Mielke simply is wrong as has been noted by other courts. In Mielke, Judge Castillo held that Congress exempted school bus operations from DOT regulatory power in 49 U.S.C. §13506(a)(1). He suggests that this is

8

supported by DOT interpretation in 49 C.F.R. §930.3(f)(1), which he states applies to all student transportation, including extra-curricular activities.

The exemption in 49 U.S.C. §13506 states: "Neither the Secretary [of Transportation] nor the Board has jurisdiction *under this part* over … a motor vehicle transporting only school children and teachers to and from school." (Emphasis supplied) However, the part to which the exemption applies covers only the economic and licensing authority of the Secretary under Part B of Subtitle IV of U.S.C. Title 49 and has no applicability to the Secretary's authority under §13502 empowering the Secretary to set qualifications and hours for drivers. It is the Secretary's authority over qualifications and hours, which appears in a completely different part, i.e. Subtitle VI of Title 49, that gives rise to the overtime exemption in FLSA §13(b)(1). §13502 contains its own specific exception for drivers of a utility service vehicle but contains no exemption for school bus drivers. 49 U.S.C. §13502(e). As noted above, even the DOT states that it still regulates extra-curricular school activities and other use of buses.

This analysis is supported by Bilyou v. Dutchess Beer Distribs., Inc. 300 F.2d 217 (2d Cir. 2002). Although Bilyou applied to the Secretary's authority over a non-transportation company, its reasoning was applied to a school bus company in Dauphin v. Chestnut Ridge Transportation, Inc., 544 F.Supp. 2d 266 (S.D.N.Y. 2008). In Dauphin, the court specifically declined to follow Mielke because of its flawed interpretation of 49 U.S.C. §13506. The court further pointed out that although the Secretary may have excluded from regulation home to school and school to home driving, the Motor Carrier Safety Act of 1984 still gives the Secretary power to regulate such transportation. Thus, the Secretary stated in the Federal Register:

> Section 206 of the Act specifically authorizes the Secretary to waive application of the regulations to any person or class of persons if the Secretary determines that such waiver is not contrary to the public interest and is consistent with the safe operation of commercial motor vehicles. It is not the intention of the FHWA

9

> to enter into a large scale program of exemptions. Safety on the public highways is an area that should not and must not be compromised. The FHWA has historically exempted some segments of transportation, however, and plans to continue such exemptions unless evidence supports a change in policy.
>
> School bus operations, lightweight vehicles, exempt intracity operations, transportation performed by governmental entities, and the marking of motor vehicles are discussed in separate sections of this preamble. Other miscellaneous issues which the FHWA believes are minor are discussed in the section captioned "Other Issues." The FHWA's disposition of the comments received on each issue in response to the NPRM is included.
>
> School Bus Operations
>
> Section 206(f) of the Act expressly directs the Secretary to waive application of the regulations issued under section 206 with respect to school buses, unless the Secretary determines that making such regulations applicable to school buses is necessary for public safety taking into account all Federal and State laws applicable to school buses. The Act refers to school buses as defined in section 102(14) of the National Traffic and Motor Vehicle Safety Act of 1966 (15 U.S.C. 1391(14)).

53 Fed. Reg. 18,042 (May 19, 1988). It is the power of the Secretary, not whether or how he exercises that power, that implicates the §13(b)(1) exemption. Spires v. Ben Hill County, 980 F.2d 683, 686 (11th Cir. 1993); Benson v. Universal Ambulance Serv. Inc., 675 F.2d 783, 785 (6th Cir. 1982).

This criticism of Mielke also appears in Walters v. American Coach Lines of Miami, Inc., 569 F.Supp. 2d 1270 (S.D. Fla. 2008). The Walters court noted the applicability to American Coach Lines of the exemption under Part B of Subtitle IV of Title 49 motor transportation that is incidental to transportation by air. 49 U.S.C. § 13506(a)(8)(A). However, the court agreed with the Bilyou analysis that the §13506 exemptions are not applicable to the provisions in §13502 establishing qualifications and hours of service and specifically rejected the holding in Mielke. Id. @ 1296-98. See also King v. Asset Appraisal Servs., Inc., 470 F. Supp. 2d 1025, 1031 (D. Neb. 2006) (rejecting Mielke).

**B.     Count II—Almy's Individual State Claim:** In Count II, Almy makes the same overtime claim he asserts in Count I except that it is an individual claim under the Illinois Minimum Wage Act. 820 ILCS 105/4a. In its answer, Kickert interposed its affirmative defense to this claim, i.e. that Almy is exempt from the overtime pay requirements of the Illinois Act by virtue of the motor carrier exemption in 820 ILCS 105/3 (d)(7). That provision states:

> 'Employee' includes any individual permitted to work by an employer in an occupation, but does not include any individual permitted to work:
>
> ****************
>
> (7)  For a motor carrier and with respect to whom the U.S. Secretary of Transportation has the power to establish qualifications and maximum hours of service under the provisions of Title 49 U.S.C. or the State of Illinois under Section 18b-105 (Title 92 of the Illinois Administrative Code, Part 395—Hours of Service of Drivers) of the Illinois Vehicle Code.
>
> The above exclusions from the term "employee" may be further defined by regulations of the Director [Director of the Department of Labor].

The disposition of Almy's Illinois claim, then, rests in part on the disposition of the collective action in Count I. More broadly, however, the Illinois statute disposes of Almy's claim regardless of any interstate commerce requirement. Illinois has the power to regulate qualifications and hours of service over Kickert regardless whether Kickert drives on any intestate trips. Although Section §18b-105 of the Illinois Vehicle Code adopts most of the federal regulations under Title 49, it goes even further. It grants the Illinois Department of Transportation the power to adopt additional rules and regulations that it deems necessary to carry out the provisions of the Illinois Vehicle Code, which include drivers' qualifications and hours of service. Thus, Kickert is exempt from the overtime pay requirements of the Illinois Minimum Wage Act by application of the motor carrier exemption regardless of any interstate transportation.

### C. Count III—Almy's Individual Claim Under the Illinois Wage Payment and Collection Act.

As detailed in the Statement of Facts, Almy claims in Count III that Kickert failed to pay him for certain morning and afternoon activities at the terminal and "deadheading" time on charters in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), citing 820 ILCS 115/9.[4] IWPCA is a wage collection statute that simply requires employers to pay employees the wages they are due pursuant to the contract of employment. "Wages" is defined in relevant part as:

> Sec. 2. For all employees, other than separated employees, "wages" shall be defined as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation.

820 ILCS 115/2.

Kickert's affirmative defense to those claims is that they are pre-empted by the National Labor Relations Act (29 U.S.C §151 *et. seq.*) and the Federal Arbitration Act (9 U.S.C . §1 *et. seq.*) insofar as they raise issues cognizant under Kickert's contract with Teamsters Local 142 and the dispute resolution procedures in that contract.

In Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985), the Supreme Court applied the principle of federal pre-emption under §301 of the NLRA to state law claims that involved the interpretation of a collective bargaining agreement. In that case, an employee sued his employer under Wisconsin tort law for bad faith handling of an insurance benefit contained in a labor contract. The court held that if the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law is pre-empted and federal labor-law principles apply. See also Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 405-06

---

[4] See Statement of Facts, ¶¶31-39.

12

(1988) ("Thus, *Lueck* faithfully applied the principle of § 301 preemption developed in *Lucas Flour:* if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles -- necessarily uniform throughout the Nation -- must be employed to resolve the dispute.")

The Seventh Circuit has applied the Supreme Court's decisions in this area to a variety of state law claims. In Tifft v. Commonwealth Edison Company, 366 F.3d 513 (7th Cir. 2004), the court held that a state statutory claim relating to layoffs and demotions was pre-empted by the NLRA. The court noted that "although the Plaintiffs' complaint characterized their claims as arising wholly under the ESL, removal was nonetheless appropriate if the Plaintiff's claims require an interpretation of, and not simply reference to, the CBA and/or other labor agreements. *See*, *e.g.*, Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 123 S. Ct. 2058, 2062, 156 L. Ed. 2d 1 (2003); Atchley v. Heritage Cable Vision Assocs., 101 F.3d 495, 498 (**7**th Cir**.**1996)." *Id.* at 517."

The Atchley v. Heritage Cable Vision Assocs. case, *supra*., is directly on point. In that case, the plaintiffs claimed the company failed to pay a bonus timely in accordance with an Indiana wage payment statute. The bonus had been negotiated and was described in a collective bargaining agreement. The Seventh Circuit held that the timing of the bonus was an issue that required interpretation of the underlying labor contract and therefore was pre-empted by federal law. See also, Baker v. Kingsley, 387 F.3d 649 (7th Cir. 2004)(Illinois Wage Act claim for wage supplements preempted since it is arguable that an interpretation of the collective bargaining agreement is necessary.)

13

As noted above, Almy has a pending grievance with Local 142 concerning the compensability of the time he describes in this case. The labor contract has the exclusive dispute resolution procedure for such issues. Kickert believes that the guarantees in the collective bargaining agreement and the provisions for charter pay cover the alleged unpaid time that Almy asserts in this case. These are issues for an arbitrator to determine.

## IV. CONCLUSION:

In view of the above and the entire record, Defendant respectfully requests that its Motion for Summary Judgment be granted and that the complaint in this matter be dismissed.

_____s/ Harry Sangerman_____
Harry Sangerman, Attorney for
Kickert School Bus Lines, Inc.


Sangerman & Gilfillan, P.C.
1854 N. Burling Street
Suite 300
Chicago, Illinois 60614
(312) 867-1234

Dated: February 23, 2009