**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT T. ALMY, on )<br>Behalf of himself and all other persons )<br>Similarly situated known and unknown, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>KICKERT SCHOOL BUS LINE, INC., )<br>)<br>Defendant. ) | Case No.: 08-cv-2902<br><br>Judge Robert M. Dow, Jr., |

**MEMORANDUM OPINION AND ORDER**

This case arises out of Defendant Kickert School Bus Line, Inc.'s ("Kickert") failure to pay Plaintiff bus driver Robert T. Almy ("Almy") and other similarly situated individuals (collectively "Plaintiffs") overtime wages for hours worked in excess of forty hours per work week. Plaintiffs allege that that failure violated both the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq*. Currently before the Court are Defendant's motion for summary judgment [55] and Plaintiffs' motion for summary judgment on Count I and Count II of Plaintiff's complaint as to liability only [59]. Defendant contends that Plaintiffs are exempt from the overtime provisions of both the FLSA and the IMWL pursuant to the motor carrier exemption because the United States Secretary of Transportation has the power to establish maximum hours of service for bus drivers, including Plaintiffs. Plaintiffs respond that the Secretary of Transportation lacks jurisdiction over them, and thus the FLSA and IMWL's overtime provisions apply to them.

As discussed below, and as indicated in the Court's May 6, 2009 minute order [69], the Court will limit its consideration of the parties' cross-motions for summary judgment to the

purely legal issue of whether the Secretary of Transportation has the power to regulate the hours of service of school bus drivers. Because the Court finds that the Secretary of Transportation does have regulatory power over school bus operations, Plaintiffs' motion for summary judgment on Count I and Count II of Plaintiff's complaint as to liability only [59] is denied, and Defendant's motion for summary judgment [55] likewise is denied.

## I.     Background

### A.     Procedural Background

On May 19, 2008, Plaintiff Almy filed a three count Complaint [1] against Kickert. Count I is a collective action claim brought pursuant to § 207 of the FLSA, alleging that Kickert failed to pay Almy and other similarly situated individuals overtime wages for hours worked in excess of forty hours per week. Count II is also based on Kickert's failure to pay overtime wages, and alleges violations of the IMWL, 820 ILCS 105/1, *et seq*. In Count III, Almy alleges that Kickert violated the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq*. by failing to pay him for all of the time that he worked for Kickert.

Including Almy, 109 bus drivers currently or formerly employed by Kickert have opted into the lawsuit. On January 12, 2009, pursuant to a joint summary judgment proposal, the parties filed stipulations of fact [54]. On February 27, 2009, Kickert filed its motion for summary judgment [55], a supporting memorandum of law [56], and a Rule 56.1 statement of undisputed facts [57]. Shortly thereafter, on March 2, 2009, Plaintiffs filed their summary judgment motion [59], a supporting memorandum of law [60], and a Rule 56.1 statement of undisputed facts [61].

On March 13, 2009, Plaintiffs filed a Rule 56(f) motion [63] seeking additional discovery to respond the statements in Defendant's Rule 56.1 statement. The parties' briefing on the Rule

56(f) motion revealed the existence of a threshold issue of law that may be dispositive of Kickert's liability under the FMLA and the IMWL – namely, whether the Secretary of Transportation (the "Secretary") has regulatory power over school bus drivers' hours. At the summary judgment stage, the Federal Rules of Civil Procedure give district courts the flexibility to move a case toward disposition by resolving some, but not all, of the issues raised in a motion for summary judgment. See Fed. R. Civ. P. 56(d)(1). Therefore, in its May 6 minute order [69], the Court advised the parties that it would to limit its initial ruling on the parties' cross-motions for summary judgment to the issue of whether the Secretary of Transportation has the power to regulate the hours of service of school bus drivers. In light of that decision, the Court denied the Rule 56(f) motion [63] without prejudice, and held in abeyance further briefing on the other issues raised in the parties' cross-motions and responses to the parties' respective Rule 56.1 statements. The Court also directed the parties to limit their responses to the cross-motions for summary judgment to that legal issue.

### B. Factual Background

In the ordinary case, on summary judgment, the Court takes the relevant facts from the parties' respective L.R. 56.1 statements. Because the Court's consideration of the cross-motions for summary judgment is limited to a purely legal issue, the Court takes the relevant facts primarily from the parties' initial pleadings and stipulations [54].

Kickert is a school bus company. Each Plaintiff is a school bus driver who, at some point, has been a member of the bargaining unit at Kickert represented by Teamsters Local 142. [54, ¶¶ 1, 11]. Plaintiff Almy and some, but not all, of the other Plaintiffs have driven school buses on school bus routes and charters that travel from Kickert's Illinois terminal to locations in other states. [54, ¶ 13]. Prior to February 3, 2008, Plaintiffs were paid their regular rate of pay

for hours worked in excess of forty hours per work week. [54, ¶ 2]. Since February 3, 2008, Plaintiffs have been paid time and one-half of their regular rate of pay for all compensated hours worked over forty hours per work week. [54, ¶ 3].

## II. Legal Standard on Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

4

**III.     Analysis**

    **A.     The FLSA and the Motor Carrier Act Exemption**

It is undisputed that, prior to February 3, 2008, Kickert did not pay Plaintiffs overtime for time worked in excess of forty hours a week. [54, ¶ 2].  The FLSA requires that employees engaged in interstate commerce be paid "at a rate not less than one and one-half times the regular rate at which [they are] employed" for work in excess of forty hours per workweek.  29 U.S.C. § 207(a)(1).  However, Congress has exempted a broad range of employees from that overtime pay rule.  See 29 U.S.C. § 213.  The question raised by both parties in their respective cross-motions for summary judgment is whether Kickert's drivers are covered by the overtime mandate of the FLSA (as Plaintiffs contend) or whether Kickert can avail itself of an exemption to that mandate (as Kickert contends).

The exemption that Kickert invokes – the motor carrier act exemption (29 U.S.C. § 213(b)(1)) – provides that the FLSA's overtime provisions do not apply to employees over whom "the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [the Motor Carrier Act ("MCA"), 49 U.S.C. § 31502]." 29 U.S.C. § 213(b)(1).  "Congress created this exemption to eliminate any conflict between the jurisdiction exercised by the Department of Labor ('DOL') over the FLSA and the mutually exclusive jurisdiction exercised by the [Department of Transportation] over the MCA." *Walters v. American Coach Lines of Miami, Inc.*, 575 F.3d 1221, 2009 WL 2182419, at *3 (11th Cir. July 23, 2009).  The Secretary need not have exercised his regulatory authority under the MCA for the motor carrier exemption to apply; the pertinent inquiry is whether, under the MCA, the Secretary possesses the power to regulate the hours of the employees at issue.  See 29 C.F.R. §

782.1(a); *Walters*, 2009 WL 2182419, at *3; *Jones v. Centurion Inv. Associates, Inc.*, 268 F.Supp.2d 1004, 1008 (N.D. Ill. 2003).

Pursuant to the MCA, the Secretary has power to establish qualifications and maximum hours of service for employees of a motor carrier, 49 U.S.C. § 31502(b)(1), that is involved in the type of transportation described in 49 U.S.C. §§ 13501 and 13502, 49 U.S.C. § 31502(a)(1). Section 13501 in turn grants the Secretary jurisdiction over motor carriers transporting passengers and property in interstate commerce. See *Mielke v. Laidlaw Transit, Inc.*, 102 F.Supp.2d 988, 991 (N.D. Ill. 2000).[1] Under the applicable Department of Labor regulation, the motor carrier exemption to the FLSA's overtime provisions applies:

> to those classes of employees * * * who: (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under * * * the Motor Carrier Act * * *, and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a).

Exemptions to the FLSA are to be narrowly construed against the employers seeking to assert them. *Klein v. Rush-Presbyterian St. Luke's Med. Ctr.,* 990 F.2d 279, 282 (7th Cir. 1993). Kickert bears the burden of establishing that Plaintiffs fit within the claimed exemption. *Id.* at 283.

According to Kickert, the Secretary has regulatory power over school bus drivers who transport passengers over state lines because they are employees of a motor carrier. Plaintiffs respond that Congress expressly divested the Secretary of jurisdiction over school bus drivers by enacting § 13506(a)(1), which provides that the Secretary does not have "jurisdiction under this part over * * * a motor vehicle transporting only school children and teachers to or from school."

---

[1] Section 13502 pertains to transportation between Alaska and other states. 49 U.S.C. § 13502.

6

49 U.S.C. § 13506. For purposes of the cross-motions, the dispute between the parties centers on the effect that § 13506(a)(1) of the MCA has on the Secretary's authority to regulate the maximum hours of service of school bus drivers.

### B. 49 U.S.C. § 13506(a)(1) Does Not Deprive The Secretary of Jurisdiction to Regulate School Bus Drivers' Hours

According to Plaintiffs, § 13506(a)(1) deprives the Secretary of all jurisdiction to regulate school bus transportation under the MCA. Plaintiffs contend that § 13506(a)(1) is an exception to the general jurisdictional grant of 49 U.S.C. § 13501. Plaintiffs reason that because 49 U.S.C. § 31502 defines the Secretary's power to set maximum hours of service by referencing his jurisdiction under § 13501, the exception to that jurisdiction set forth in § 13506(a)(1) necessarily precludes the Secretary from setting maximum hours for school bus drivers, and thus excludes such drivers from the scope of the motor carrier exception.

In support of their view of § 13506(a)(1), Plaintiffs cite *Mielke v. Laidlaw Transit, Inc.*, 102 F. Supp. 2d 988 (N.D. Ill. 2000). In *Mielke*, which the parties agree is factually analogous to the instant case, the court held that the motor carrier exemption does not apply to school bus drivers because § 13506(a)(1) deprives the Secretary of Transportation of jurisdiction over them. *Id.* at 991-92. The *Mielke* court reasoned that the reference to "this part" in § 13506 refers to "the provisions [in Part B of subtitle IV] defining the Transportation Department's jurisdiction with regard to motor carriers." *Id.* at 991. The court concluded that "Section 13506 excepts school bus operations from the jurisdictional grant of § 13501[, such that] the reference in § 31502, which empowers the Department to regulate qualifications and hours of motor carriers, to § 13501 'motor carriers' does not include school bus drivers." *Id.*

According to the *Mielke* court, a change in the statutory language in § 13506 indicates that Congress intended to strip the Secretary of all regulatory jurisdiction, including the authority

7

to regulate hours. A prior version of the school bus exception expressly stated that it did not limit the Secretary's authority to regulate the hours of school bus drivers. 49 U.S.C. § 203(b)(1) (West 1970) ("Nothing in this chapter, except the provision of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operations standards of equipment shall be construed to include (1) motor vehicles employed solely in transporting school children and teachers to or from school") (quoted in *United States v. Chartered Bus Serv., Inc.,* 329 F. Supp. 1073, 1074 (E.D. Va. 1971)). The *Mielke* court concluded that Congress's decision to remove the explicit reference to safety regulations suggested that it intended to remove the Secretary's authority to issue such regulations with respect to school bus drivers. 102 F.Supp.2d at 991.

Kickert contends that *Mielke* was wrongly decided, and urges this Court instead to follow *Dauphin v. Chestnut Ridge Transportation, Inc.*, 544 F. Supp. 2d 266, 273 (S.D.N.Y. 2008), in which the court reached the opposite conclusion as the *Mielke* court; namely, that § 13506(a)(1) does not exclude school bus transportation from the scope of the motor carrier exemption. As in the instant case, the *Dauphin* plaintiffs relied on *Mielke* for the contention that "school bus transportation is specifically exempted by [§ 13506(a)(1)] from the motor carrier exemption from the FLSA, which has the effect of placing it within the FLSA's protection." 544 F. Supp. 2d at 272. The *Dauphin* court found that the plaintiffs' reading of § 13506 was foreclosed by the Second Circuit's interpretation of a similar exemption in *Bilyou v. Dutchess Beer Distribs., Inc.,* 300 F.3d 217, 229 (2d Cir. 2002). *Id. Bilyou* involved 49 U.S.C. § 13505, which divests the Secretary of "jurisdiction under this part" over transportation in furtherance of a primary business other than transportation. 49 U.S.C. § 13505; see *Bilyou,* 300 F.3d at 225-29. Noting that § 13505 "is a provision of Part B of Subtitle IV of Title 49, * * * [which] contains

8

provisions authorizing the DOT to enact registration and security (insurance and bonding) requirements for motor carriers, freight forwarders, and brokers," the *Bilyou* court concluded that "§ 13505 denies the Secretary power to prescribe economic and licensing regulations of the sort covered in Subtitle IV, Part B." 300 F.3d at 226. The court further concluded that, because "[§] 31502 falls under a different part of Title 49" (Part B of Subtitle VI), "[§] 13505 has no bearing on the Secretary's power, as described in 29 U.S.C. § 213(b)(1), 'to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49.'" *Id.* Applying *Bilyou*, the Dauphin court concluded that § 13506 – which, like the provision analyzed in *Bilyou*, limits the Secretary's jurisdiction "under this part" – applies only to the Secretary's economic and licensing authority, and does not deprive the Secretary of jurisdiction to set "qualifications and maximum hours of service" for school bus drivers under § 31502.

In a case that was decided after briefing on the cross-motions was completed, the Eleventh Circuit addressed the contradictory holdings in *Bilyou* and *Mielke* in the context of yet another similarly worded statutory exemption. *Walters*, 575 F.3d 1221, 2009 WL 2182419, at *8-9. The *Walters* court noted that "no other court appears to have adopted [the *Mielke* court's] rationale, and the few that have addressed this issue since *Bilyou* and *Mielke* have followed the interpretation of the former." *Id.* at *9 (citing *King v. Asset Appraisal Servs., Inc.*, 470 F.Supp.2d 1025, 1031-32 (D. Neb. 2006) (adopting the *Bilyou* court's reasoning and holding that § 13505 does not deprive the Secretary of authority to regulate hours)); see also *Hoffman v. First Student, Inc.*, 2009 WL 1783536, at *6 (D. Md. June 23, 2009) (holding "as in *Dauphin*, and contrary to *Mielke*, * * * that the motor carrier defense is potentially applicable" in the context of school bus drivers). Likewise, the Eleventh Circuit found "*Bilyou*'s statutory analysis more persuasive than *Mielke*'s," holding that the "incidental-to-air" exemption, 49 U.S.C. §

9

13506(a)(8)(A), which provides that the Secretary does not have "jurisdiction under this part over * * * transportation of passengers by motor vehicle incidental to transportation by aircraft," does not eliminate the Secretary's authority to regulate maximum hours. *Walters*, 2009 WL 2182419, at *9. Focusing on the statutory language, the *Walters* court reasoned that while "49 U.S.C. § 31502(a)(1) references § 13501 to determine the scope of the Secretary's authority under the MCA, it does so only to indicate to what transportation the MCA [covers]." *Id.* at *8. The court found "no indication that this provision is meant to incorporate anything other than the descriptions of transportation contained in § 13501," making "[a]ny exemptions to § 13501 * * * irrelevant." *Id.*

The *Walters* court also found support for its reading of § 13506 in the Department of Transportation's regulations. The regulations define "exempt motor carriers" as those "exempt from economic regulation * * * under 49 U.S.C. § 13506," and note that such carriers nevertheless "are subject to the safety regulations set forth in this subchapter." 49 C.F.R. § 390.5. The court concluded that this definition confirmed that § 13506 relates only to economic regulation and not safety regulations, such as the Secretary's authority to regulate maximum hours.

Finally, unlike the *Mielke* court, the Eleventh Circuit was not persuaded that changes in the statutory language indicated that Congress intended for § 13506 to deprive the Secretary of all regulatory authority. Like the school bus exception at issue here, the incidental-to-air exemption addressed in *Walters* originally "stated that [it] did not apply to regulations * * * [regarding] maximum hours," but Congress later removed the express references to wage and hour issues. 2009 WL 2182419, at *8. The *Walters* court concluded that "the elimination of [the reference to wage and hour regulation] likely reflects the fact that the separation of the various

10

sections of the MCA rendered the reference to Section 204 meaningless." *Id.* at *9. According to the court, "[t]here is no indication in the legislative history that Congress intended to alter its original view regarding the effect of the incidental-to-air exemption." *Id.* (citing H.R. Rep. No. 96-1069 at 19 (1980), U.S. Code Cong. & Admin.News 1980, pp. 2283, 2301). Similarly, the legislative history does not suggest that Congress intended to expand the school bus exemption beyond its initial scope as an exemption from economic regulation. H.R. Rep. No. 96-1069 at 18 (1980) ("[u]nder the current law, certain types of transportation are exempt from regulation by the Interstate Commerce Commission. This section of the bill expands the list of types of motor carrier transportation exempt from economic regulation.").

The Court finds the Eleventh Circuit's thorough analysis in *Walters* to be compelling and consistent with the clear weight of the pertinent decisional and regulatory authority on the scope of the Secretary's jurisdiction. The Court further concludes that the Seventh Circuit likely would be persuaded by the reasoning of the Eleventh and Second Circuits – the only two courts of appeals to have weighed in on the issue – and would not create a circuit split regarding the effect that § 13506 has on the Secretary's jurisdiction. Therefore, the Court holds that § 13506 relates only to economic regulation, and does not deprive the Secretary of the authority to set maximum hours for school bus drivers.

### C. 49 C.F.R. 390.3(f) Does Not Indicate That the Secretary Lacks Jurisdiction to Regulate School Bus Drivers' Hours

Plaintiffs also contend that the applicable Department of Transportation regulations (the Federal Motor Carrier Safety Regulations or "FMCSRs") indicate that the Secretary has interpreted § 13506 as depriving himself of all regulatory authority over school bus drivers. The FMCSRs state that "[u]nless otherwise specifically provided, the rules in this subchapter do not apply to * * * [a]ll school bus operations," 49 C.F.R. §390.3(f)(1), which the regulations define

11

as "the use of a school bus to transport only school children and/or school personnel from home to school and from school to home," 49 C.F.R. § 390.5.

In *Mielke*, the court noted that courts have relied on another exception set forth in 49 C.F.R. § 390.3(f) – § 390.3(f)(4), which pertains to the "transportation of human corpses or sick and injured persons" – to hold that the Secretary lacks the power to regulate qualifications and hours of ambulance drivers. 102 F. Supp. 2d at 992 (citing *Trocheck v. Pellin Emergency Med. Serv., Inc.*, 61 F. Supp. 2d 685, 691 (N.D. Ohio 1999) (finding that ambulance drivers do not fall under the MCA exemption, reasoning that 49 C.F.R. § 390.3(f)(4) indicated that the Department of Transportation had interpreted the MCA as not extending jurisdiction over ambulance drivers)); *Bayles v. American Med. Response of Colo., Inc.*, 937 F. Supp. 1477, 1484 (D. Colo. 1996) (holding that 49 C.F.R. § 390.3(f)(4) "exempts ambulance services from all requirements of the MCA")); see also *Spires v. Ben Hill County*, 980 F.2d 683, 687 (11th Cir. 1993); *Jones v. Giles*, 741 F.2d 245, 250 (9th Cir. 1984) (holding "that ambulance services are not subject to the Motor Carriers Act, and are therefore subject to the FLSA" based on the DOT's interpretation of the statute as set forth in the regulations). Plaintiffs argue that, following that line of cases, this Court should conclude that 49 C.F.R. § 390.3(f)(1) indicates that the Secretary does not believe that he has jurisdiction over school bus drivers, and should defer to that interpretation.[2]

However, the courts in the ambulance driver cases did not conclude that the Secretary had interpreted his jurisdiction under the MCA as not extending to ambulance drivers based

---

[2] As Plaintiffs note, the *Mielke* court found that "49 C.F.R. 390.3(f), which the courts in *Trocheck* and *Bayles* relied upon to hold that ambulance drivers are not subject to the Department's power to set qualifications and hours, also excepts '[a]ll school bus operations' from the Transportation Department's jurisdiction." 102 F. Supp. 2d at 992. However, *Mielke* principally relied on *Trocheck* and *Bayles* to support its "conclusion that the FLSA applies to a motor carrier's employees when those employees are excepted from the Transportation Department's jurisdiction, whether by operation of statute or regulation." *Id.* The court does not appear to have concluded that 49 C.F.R. § 390.3(f) *itself* deprives the Secretary of jurisdiction, as Plaintiffs appear to suggest.

solely on the language of 49 C.F.R. § 390.3(f)(4). As the Eleventh Circuit explained in *Spires*, 49 C.F.R. § 390.3(f)(4) implements the ICC's conclusion in *Lonnie W. Dennis*, 63 M.C.C. 66 (1954), that Congress did not intend the jurisdiction of the MCA to extend to the provision of transportation for ambulance services. 980 F.2d at 686-87. Plaintiffs have not identified any similar pronouncement indicating that the Department of Transportation has concluded that it lacks all jurisdiction over school bus drivers under the MCA.

Furthermore, the regulatory guidance that the Department of Transportation has provided with respect to the FMCSRs suggests that the agency has interpreted the MCA as granting the Secretary regulatory power over school bus drivers.[3] For example, the regulatory guidance regarding 49 C.F.R. § 390.3 provides that when "anyone operating school buses under contract with a school * * * transports children to school-related functions * * * such as sporting events, class trips, etc., and operates across State lines, its operation must be conducted in accordance with the FMCSRs." *See* FMCSR Regulatory Guidance Part 390.3, Question 14, available at www.fmcsa.dot.gov. However, according to the regulatory guidance, school bus operators transporting "school children and/or school personnel from home to school and from school to home" are not required to comply with the FMCSRs. *Id.* This regulatory guidance indicates that the Department of Transportation interprets the MCA as granting the Secretary jurisdiction over school bus operations, at least to the extent that they involve transportation other than from home

---

[3] The Federal Motor Carrier Safety Administration ("FMCSA"), an agency within the Department of Transportation, has developed regulatory guidance to assist motor carriers and other parties bound by the FMCSRs. The regulatory guidance can be found on the Federal Motor Carrier Safety Administration's ("FMCSA") website at www.fmcsa.dot.gov. The FMCSA's regulatory guidance is entitled to due "respect" as a "reasonable agency interpretation" having some "persuasive force." See *United States v. Mead Corp.,* 533 U.S. 218, 234 (2001) ("*Chevron* did nothing to eliminate *Skidmore's* holding that an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency"); see also *Alaska Dept. of Environ. Conservation v. E.P.A.*, 540 U.S. 461, 488 (2004) (citing *Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003) ("[c]ogent 'administrative interpretations * * * not [the] products of formal rulemaking * * * nevertheless warrant respect.'")).

to school and vice versa. The Court finds this interpretation to be a reasonable one and will defer to it. With respect to school bus operations involving the transportation of school children and/or personnel between home and school, the Court agrees with the *Dauphin* court that the Secretary has jurisdiction to regulate such transportation, and simply has chosen, in the exercise of his discretion, not to exercise that regulatory power. 544 F. Supp. 2d at 273 (finding that 49 C.F.R. § 390.3(f)(1) merely indicates that the Secretary has chosen not to exercise his jurisdiction to regulate "home-to-school and school-to-home school bus transportation[, having determined that it] is not 'necessary for public safety,' given the array of provisions regulating school bus transportation, notwithstanding the Secretary's statutory authority to regulate such transportation").

For these reasons, the Court concludes that the Secretary of Transportation does have the authority to regulate the hours of school bus drivers, and therefore the MCA exemption may be applicable here. However, as Plaintiffs have observed, the Court's analysis of whether the MCA exemption in fact relieves Kickert of its obligation to pay its employees time and a half for overtime does not end there. As explained above, the MCA exemption applies to employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act, and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act. See 29 C.F.R. § 782.2(a). The analysis set forth above addresses only the first prong of the analysis. The Court must also determine whether Plaintiffs' actions were safety-related, and whether they involved interstate commerce.

The parties do not dispute that Plaintiffs are or were employed as drivers for Kickert. As such, Plaintiffs' actions affected the safety of operation of motor vehicles on the public highways. See 29 C.F.R. § 782.2(b)(2); 29 C.F.R. § 782.3(a); see also *McGee v. Corporate Express Delivery Systems*, 2003 WL 22757757, at \*4 (N.D. Ill. Nov. 20, 2003). However, additional briefing will be required to determine whether Plaintiffs' activities involved interstate transportation of passengers. In their Rule 56(f) motion [63], Plaintiffs sought additional discovery related to this issue. The parties are directed to meet and confer and to file within 14 days of the date of this opinion a joint status report setting forth their views on additional discovery and any other pertinent matters related to this litigation going forward.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment on Count I and Count II of Plaintiff's complaint as to liability only [59] is denied, and Defendant's motion for summary judgment [55] is denied.

Dated: September 11, 2009

_____
Robert M. Dow, Jr.
United States District Judge