**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ROBERT T. ALMY and           )
CHRYSSE RICE,              )
                                    )
                                    )    Case No.:  08-cv-2902
              Plaintiffs,     )
                                    )    Judge Robert M. Dow, Jr.,
      v.                     )
                                    )
KICKERT SCHOOL BUS LINE, INC.,   )
                                    )
              Defendant.     )

**MEMORANDUM OPINION AND ORDER**

*Pro se* plaintiffs Robert Almy and Chrysse Rice (collectively "Plaintiffs") are school bus drivers who allege that their employer, Defendant Kickert School Bus Line, Inc., failed to pay them overtime wages for hours that they worked in excess of forty hours per week. Plaintiffs allege that this failure violated both the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.* ("IMWL"). Plaintiffs also allege that Defendant failed to pay them for all the time that they worked, in violation of the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.* ("IWPCA").

Earlier in the case, Defendant moved for summary judgment [55], and Plaintiffs (who at the time were represented by counsel and were part of a collective action, all the other members of which have settled their claims) cross-moved for partial summary judgment on the issue of liability on the FLSA and IMWL overtime claims [59]. Defendant argued that it should be granted summary judgment on the FLSA claim because the United States Secretary of Transportation ("the Secretary") has the power to establish qualifications and maximum hours of

service for school bus drivers and therefore school bus drivers fall within the "motor carrier exemption" to the overtime provision contained in the FLSA. See 29 U.S.C. § 213(b)(1). Defendant also argued that it should be granted summary judgment on the IWML claim by virtue of the similar motor carrier exemption set forth in 820 Ill. Comp. Stat. 105/3(d)(7). Plaintiffs disputed the applicability of both exemptions.

The Court limited its consideration of the parties' cross-motions for summary judgment to the potentially dispositive and purely legal issue of whether the Secretary has the power under 49 U.S.C. § 31502 to establish qualifications and maximum hours of service for school bus drivers. See [69], [77]. Looking to analogous and persuasive case law from the Second and Eleventh Circuits, the Court concluded that the Secretary has jurisdiction to regulate the qualifications and maximum hours of service of school bus drivers and that as a result the Plaintiffs *could* fall within the motor carrier exemptions to the FLSA and IMWL. The Court denied Defendant's motion for summary judgment, however, because the factual record was insufficiently developed for the Court to determine whether Plaintiffs *did* fall within the motor carrier exemptions. See [77 at 14-15]. The Court also denied Plaintiffs' cross-motion for partial summary judgment in light of its holding that the Secretary has jurisdiction to regulate the qualifications and maximum hours of service of school bus drivers.

After the Court's ruling, the case settled as to all Plaintiffs except Almy and Rice. The remaining parties have since conducted discovery on the issues bearing on the potential applicability to Plaintiffs of the motor carrier exemptions to the FLSA and IMWL. Defendant has once again moved for summary judgment on all counts. [183]. Plaintiffs oppose the motion but have not cross-moved for summary judgment. Plaintiff Almy has instead filed a motion for reconsideration or vacation of the Court's order denying summary judgment [190], which

Defendant opposes [195]. Plaintiffs jointly moved to strike Defendant's brief opposing Plaintiff Almy's motion for reconsideration for improper service [201]. Defendant responded to the motion to strike by sending Plaintiffs hard copies of its summary judgment materials and its response to the motion for reconsideration [203]. Plaintiffs subsequently moved for sanctions on the issue of improper service [208]. They have also sought leave to file a further response to Defendant's motion for summary judgment [204].

For the reasons stated below, the Court denies Plaintiffs' motion to strike [201]; denies Plaintiffs' motion for sanctions [208]; denies Plaintiff Almy's motion for reconsideration [190]; grants Plaintiffs' joint motion for leave to file a further response to the motion for summary judgment [204]; and grants Defendant's motion for summary judgment [183].

I.      **Background**

Because the Court ultimately is considering Defendant's motion for summary judgment, the Court construes all "facts and draw[s] all reasonable inferences in the light most favorable to the nonmoving party," Plaintiffs. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). Generally, the Court takes all relevant facts from the parties' Local Rule ("L.R.") 56.1 statements. In this case, however, Plaintiffs have failed to file an L.R. 56.1 statement notwithstanding Defendant's compliance with L.R. 56.2, see [187 & 188], which is designed to apprise *pro se* litigants opposing summary judgment of their obligations under the relevant federal and local rules. Plaintiffs have instead submitted a lengthy "response in opposition" to Defendant's L.R. 56.1 statement in which they object to many of Defendant's factual assertions and make their own argumentative assertions that are for the most part unsupported by citations to admissible evidence. [198]. "A response to a statement of facts * * * is not the place for purely argumentative denials," *Moede v. Pochter*, 701 F. Supp. 2d 997, 999 (N.D. Ill. 2009) (quotation

omitted), and courts are not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). Yet Defendant has not pressed the issue of Plaintiffs' lack of compliance with L.R. 56.1, and "the decision whether to apply [local] rule [56.1] strictly or to overlook any transgression is one left to the Court's discretion." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). In light of Plaintiffs' *pro se* status[1] and apparent efforts to comply with L.R. 56.1 by filing a lengthy (though improper) response to Defendant's L.R. 56.1 statement [198] and submitting affidavits and other evidence with their opposition brief [197], the Court is inclined to overlook this transgression.[2] The Court will look to Defendant's L.R. 56.1 statement [185] and the materials submitted therewith [186], Plaintiffs' responsive materials to the extent that they are supported by citations to admissible evidence, [197], [198], and the parties' earlier factual stipulation [54]. See Fed. R. Civ. P. 56(c)(3). The Court also notes that Plaintiffs have repeatedly reiterated that "[t]he facts are not in dispute." [196 at 1]; [198 at 1]; [199 at 1].

Defendant is an Illinois corporation engaged in business as a private carrier contracting with school districts to transport children to and from school and through charter contracts to and from other events on large passenger buses. [185 ¶ 1]. Defendant's bus terminal (and principal place of business) is located in Lynwood, Illinois, near the Illinois-Indiana border. [185 ¶ 2]. Defendant contracts with public school districts in both Illinois and Indiana. [185 ¶ 2]. Children transported to Indiana schools reside exclusively in Indiana, but Defendant has some contracts with private schools in Illinois whose students reside in Indiana. [185 ¶ 2]. Defendant possesses

---

[1] Plaintiff Almy is *pro se* but is not an inexperienced litigant. See *Almy v. U.S. Dep't of Justice*, 114 F.3d 1191, 1997 WL 267884 (7th Cir. 1997).
[2] The Court will not, however, entertain requests for relief made in Plaintiffs' L.R. 56.1 response. These requests are not pertinent to the motions at hand and, moreover, are not properly before the Court.

an interstate motor common carrier certificate and has been issued a "DOT number" by the Federal Motor Carrier Safety Administration. [185 ¶ 18].

Plaintiff Almy is a citizen of Indiana and Plaintiff Rice is a citizen of Illinois. Both Plaintiffs are employed by Defendant as school bus drivers. [54 ¶ 11]. Plaintiffs are required to maintain commercial driver's licenses with "P" (Passenger) and "S" (School Bus) endorsements, [54 ¶¶ 4, 6], and to undergo medical fitness and drug and alcohol testing. [54 ¶¶ 7-8]. Plaintiffs' regular driving routes required them to transport children across the Illinois-Indiana border on a daily basis. [54 ¶ 13]; [185 ¶¶ 23-24]. Both Plaintiffs also drove interstate charter routes on occasion. [54 ¶ 13]; [185 ¶ 24].

The parties have stipulated that "[p]rior to February 3, 2008, each plaintiff was paid his or her regular rate of pay for all compensated hours worked, including time worked over 40 hours in individual work weeks." [54 ¶ 2]. They have also stipulated that "[a]fter February 3, 2008, each plaintiff has been paid time and one-half his or her regular rate of pay for all compensated hours worked over 40 hours in individual work weeks." [54 ¶ 3].

Plaintiffs were at all relevant times members of the bargaining unit represented by Teamsters Local 142, which has been a party to collective bargaining agreements ("CBAs") with Defendant, including one that was in effect from July 1, 2005 to June 30, 2008 and one that was in effect from July 1, 2008 to June 30, 2011. [54 ¶ 1]. Under the 2005-2008 and 2008-2011 CBAs, Plaintiffs were guaranteed a minimum of two hours' pay for their morning routes, two hours' pay for their evening routes, and three hours' pay for charters, even if those routes took less time. [185 ¶¶ 32, 36]; [186-6 ¶ 11.5]; [186-10 ¶ 11.5]; Almy Dep. 44:2-12; Rice Dep. 41:1-12, 43:2-7. The CBAs further provided that drivers whose hours exceeded the guarantees "will receive payment for the amount of actual hours worked." [186-6 ¶ 11.5]; [186-10 ¶ 11.5].

Plaintiffs assert that the driving time alone on their daily morning and evening routes always took longer than two hours. [197 Ex. A ¶ 11]; [197 Ex. B ¶ 5]. They contend that they were not paid for all of the actual time that they worked performing required tasks, such as gathering and completing paperwork, conducting "pre-trip" inspections of their buses, fueling and cleaning their buses, and reviewing schedules. See Almy Dep. 47:13-49:13; Rice Dep. 54:24-56:19; [185 ¶¶ 33-34]. They contend that these tasks took more time than Defendant allotted – and paid – for them. See [197 Ex. A ¶¶ 12-13]; [197 Ex. B ¶ 10]; [197 Ex. J]. Defendant does not dispute that these tasks are part of Plaintiffs' duties but "considers this time paid as part of the morning [and evening] route package[s]," [185 ¶¶ 33-34], and contends that Plaintiffs "have been paid for all hours worked." [200 at 6]. Plaintiffs also contend that they were not (but should have been) paid for "deadhead" time accrued while they were driving empty buses to and from charter assignments. Defendant agrees that Plaintiffs "were not paid specifically for 'deadhead' time each day they operated a charter" but contends that they were nonetheless compensated for their time worked because "Kickert considers this time paid as part of the charter pay." [185 ¶ 35].

Plaintiffs are required to keep a record of their starting time, driving time, and quitting time consistent with instructions given by Defendant. [54 ¶ 10]. Per the language from Defendant's "Driver's Handbook" submitted by Almy, these instructions were to "Fill in the exact time for all the work you did. From the time you are expected in the drivers' lounge (before routes), to the time you return to Kickert's drivers' lounge (after routes). On a normal day, this would be the time on the time of your route sheet when you leave and the time on the bottom of the route sheet when you return. When a day changes (early dismissal or late start), write the exact time you work that day. When something occurs to permanently alter your departure and return times, it is your responsibility to give that information to the Supervisor so

that your route sheet can be updated." [190-1 Ex. G]. Plaintiffs assert that when they filled out

their timecards in this fashion, "Kickert would then initiate discipline procedures against [them]

and put write ups in [their] personnel file[s] and refuse to pay [them] for actual hours worked."

[197 Ex. A ¶ 11]; see also [197 Ex. B ¶ 12]. Plainitff Almy filed a grievance on the "issue of

unpaid back wages and unpaid overtime wages," [186-11 ¶ 4], on January 28, 2008. [197 Ex. A ¶

6]; see also [185 ¶ 40]. Defendant and Teamsters Local 142 agreed to place the grievance on

hold, [197 Ex. A ¶ 6], and the grievance has not yet been resolved. [185 ¶ 40]; [197 Ex. A ¶ 6].

## II.     Motion for Reconsideration and Related Filings

Plaintiff Almy disagrees with the Court's conclusion that the Secretary has jurisdiction

over Defendant and school bus drivers generally. Invoking Federal Rule of Civil Procedure

54(b), he has moved the Court to vacate its September 11, 2009 opinion [77] as "void and

inconsistent with due process." [190 at 1]. In the alternative, he wishes the Court to reconsider its

opinion "to prevent manifest injustice." [190 at 1].

### A.     Motion to Strike & Motion for Sanctions

Defendant filed a brief opposing Plaintiff Almy's motion for reconsideration. [195]. In

the certificate of service accompanying that filing, Defendant stated that it filed the brief

electronically through the Court's CM/ECF system and served copies to Plaintiffs "via email."

[195 at 17]. Plaintiffs jointly moved to strike Defendant's response brief for improper service.

[201]. Citing Federal Rules of Civil Procedure 5(b)(2)(E) and 5(b)(3), as well as Northern

District of Illinois Local Rule 5.9, Plaintiffs contended that the Court should strike Defendant's

brief because they "never consented in writing to being served by electronic means." [201 ¶ 7].

Defendant responded to the motion to strike within five days. [203]. Defendant's counsel

conceded that he had failed to serve paper copies on Plaintiffs, chalked the failure up to an

oversight, and assured the Court that he had instructed his secretary to mail hard copies of Defendant's briefs opposing reconsideration [195] and supporting summary judgment [200] to Plaintiffs. In its next filing [205], Defendant noted in the certificate of service that it had served Plaintiffs "via the court's ECF system and via U.S. Mail, postage prepaid." Plaintiffs do not dispute that they received this filing by U.S. Mail but contend that "[s]ervice was not made via the court's ECF and such a claim  * * *  taints the integrity of the judicial process" and is "in contempt of Chief Judge James F. Holderman's general order on electronic case filing." [208]. Accordingly, they have asked the Court to impose sanctions, specifically "remedial damages" and an order mandating compliance with Local Rule 5.9, Federal Rule of Civil Procedure 5, and Northern District of Illinois General Order 11-0024.[3] [208].

Federal Rule of Civil Procedure 5(a) does not by its terms explicitly require service of the briefs at issue here. See Fed. R. Civ. P. 5(a); Fed. R. Civ. P. 7(a) (defining "pleadings"). Yet commentators and courts have interpreted Rule 5 broadly to mean that "every party not in default is entitled to receive notice of each step taken in the action." 4B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard R. Marcus, FEDERAL PRACTICE & PROCEDURE § 1143 (3d ed. 2012); *Larson v. Brown Cnty.*, No. 11-cv-0980, 2012 WL 3057035, at *8 (E.D. Wis. July 27, 2012) ("Plaintiff is hereby notified that, from now on, he is required, under Fed. R. Civ. P. 5(a), to send a copy of every paper or document filed with the court to the opposing parities or their attorney(s)."); *In re Motion to Quash Subpoena to Bergen, Paulsen & Co.*, No. 7:10-cv-00434, 2011 WL 6826416, at *4 (N.D. Iowa Dec. 28, 2011) ("The Court concludes that the Rules

---

[3] If Defendant were as inclined as Plaintiffs to scrutinize the procedural rules in response to each filing its opponent submitted, it too could find technical grounds on which to object to the filings. See, e.g., L.R. 5.2(c)(2) (requiring typewritten documents to have margins of at least one inch); L.R. 5.3(b) ("Every motion or objection shall be accompanied by a notice of presentment specifying the date and time on which, and judge before whom, the motion or objection is to be presented."); *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) ("[P]ro se litigants are not excused from compliance with procedural rules." (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

should be broadly construed to provide notice when a party's interests might be adversely affected."); *Heim v. Dauphin Cnty. Prison*, No. 3:CV-10-1491, 2011 WL 2132845, at *1 n.2 (M.D. Pa. May 27, 2011) ("Fed. R. Civ. P. 5(a) requires a party to serve on the other parties to the lawsuit copies of motions, briefs, and other documents accompanying those filings."). Northern District of Illinois General Order 11-0024 reflects this broad interpretation and provides that "Parties to a case assigned to ECF, who are not E-Filers and who have not otherwise consented to service by electronic means under Fed. R. Civ. P. 5(b)(2)[(E)] are entitled to receive a paper copy of any electronically filed document." N.D. Ill. Gen. Order 11-0024 (X)(D). The briefs at issue were filed electronically, neither Plaintiff Almy nor Plaintiff Rice is an E-Filer, and neither has consented in writing to electronic service as required by Fed. R. Civ. P. 5(b)(2)(E). The Court therefore concludes that Defendant at least violated a local and likely a federal procedural rule when it purported to serve Plaintiffs by e-mail. Indeed, Defendant's counsel conceded that he "fail[ed] to follow special rules for *pro se* plaintiffs." [203 ¶ 2]. The question presented by Plaintiffs' motion to strike is what, if any, remedial action is appropriate.

Federal Rule of Civil Procedure 5 does not by its terms require the imposition of sanctions for noncompliance. See Fed. R. Civ. P. 5; *Kennedy v. Hankey Group*, No. WDQ-09-2890, 2010 WL 1664087, at *7 (D. Md. Apr. 22, 2010); *compare* Fed. R. Civ. P. 11(a) ("The court must strike an unsigned paper * * * *"). Nor do General Order 11-0024 or the Local Rules pertaining to service call for sanctions. Yet Plaintiffs seek a severe remedy for an infraction that Defendant admitted and promptly took steps to correct. Given the apparent lack of prejudice to Plaintiffs – Plaintiff Almy replied to and engaged with the substantive arguments raised in Defendant's improperly served filing and did so in conformance with the previously established briefing schedule – the Court is not inclined to impose any sanctions on Defendant for its

improper service. This is not to say that the Court "in [any] way condones the loose adherence to the Federal Rules of Civil Procedure and Local Rules," *Doe v. Tsai*, No. 08-1198, 2010 WL 2605970, at *17 (D. Minn. June 22, 2010), but only that the Court does not find it necessary to strike Defendant's brief or impose other sanctions in this instance.

First and most importantly, Plaintiffs have not demonstrated or even alleged that they were prejudiced or negatively affected in any way by the improper service.[4] See *Kennedy*, 2010 WL 1664087, at *7. Other courts that have ruled on motions to strike for noncompliance with Fed. R. Civ. P. 5 have found prejudice to the moving party an important factor in their consideration of whether sanctions were warranted. See, *e.g.*, *McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 557 (6th Cir. 2003) ("The violation of Rule 5(b), however, does not provide a sufficient basis to reverse the district court's summary judgment because Plaintiffs had actual notice that the summary judgment motion had been filed."); *Kennedy*, 2010 WL 1664087, at *7; *Faircloth v. Hartman*, No. 08-cv-01742, 2009 WL 24613, at *1 (D. Colo. Jan. 5, 2009) (denying motion to strike where "there does not appear to be any prejudice to Defendants regarding the Motions that they seek to strike, as they have received notice of the Motions and Declarations via the electronic filing system"); *Brown v. S. F. Sheriffs Dep't*, No. C 03-0047, 2007 WL 4166007, at *3 (N.D. Cal. Nov. 19, 2007) (denying motion to strike for failure to comply with Fed. R. Civ. P. 5(a) where *pro se* plaintiff asserted "personal problems" as excuse and no prejudice inured to defendants; "Defendants filed a timely reply brief in which they noted their awareness that plaintiff had filed a brief with the court, yet they posed no alternative should the court deny their motion, nor did they request an extension of time to reply or that the court provide them with a

---

[4] In their reply brief [206], Plaintiffs assert that they would "be prejudiced such action" [sic] if the Court declines to strike Defendant's brief, but they failed to (1) raise this or any similar argument in their motion to strike and (2) provide the Court with even a suggestion as to how they were adversely affected by the improper service at the heart of this dispute.

copy of the opposition. The court can only assume that defendants obtained a copy of the brief on their own."); *Coker v. Dallas Cnty. Jail*, No. 3:05-cv-0005, 2007 WL 3022575, at *7 (N.D. Tex. Oct. 17, 2007) ("The Court declines to strike Plaintiff's documents for failure to serve the Dallas County Defendants. Defendants have not been prejudiced because the record reflects they had notice through ECF that Plaintiff filed the affidavits as well as an opportunity to reply."); *E.E.O.C. v. Lee's Log Cabin, Inc.*, No. 05-c-0507, 2006 WL 6021170, at *1 (W.D. Wis. May 9, 2006) (denying motion to strike for noncompliance with Fed. R. Civ. P. 5(b)(2)(D) where plaintiffs ultimately received a hard copy of the filed document and "striking defendant's motion would achieve nothing but undue delay"); *Colasanti v. Allstates Cos., Inc.*, No. Civ.A.3:01CV-257-S, 2001 WL 1774441, at *1 (W.D. Ky. Sept. 10, 2001) (finding "the remedy of striking" an improperly served document "unnecessary" where improperly served party had not taken any action in reliance on the failure, took no steps to attempt to rectify the harm by requesting an extension of time, and had "received a copy of the response and has attempted to respond to its merits"). The Court agrees with these courts that lack of prejudice to the moving party is a key factor militating against the imposition of severe sanctions.

Second, to the Court's knowledge, this is the first time during the four-year existence of this case that Defendant failed to properly serve Plaintiffs. The Court stresses that compliance with the procedural rules is required no matter what the frequency or nature of filing or duration of a case, but concludes that the apparently isolated nature of this error in the broader context of this action weighs against imposing sanctions. *Cf.* Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."). On the record before it, and particularly in view of Defendant's prompt and candid response to its error [203], the Court is not convinced that

sanctions are necessary to prevent recurrence of the error; a warning will do. *Lynn v. Roberts*, No. 03-3464, 2005 WL 3087841, at *4 (D. Kan. Nov. 1, 2005) ("[T]he Court will not resort to the extreme measure of striking petitioner's document at this time without first giving petitioner a warning that he must comply with the procedural rules."). Should Defendant fail to heed this warning and engage in repeated violations of the procedural rules, the Court may be more inclined to follow the lead of *United States v. International Business Machines Corp.*, 68 F.R.D. 613, 614-16 (S.D.N.Y. 1975), and strike its nonconforming filings in summary fashion. See *Lynn*, 2005 WL 3087841, at *4 ("Petitioner's failure to comply with these instructions in the future, should he file additional pleadings, will result in the Court's striking such pleadings, motions, or other papers."); *Coker v. Dallas Cnty. Jail*, No. 3:05-cv-0005, 2007 WL 3022575, at *7 (N.D. Tex. Oct. 17, 2007) (declining to strike filing but "expressly admonish[ing]" that future "failure to comply may result in sanctions").

Finally, there is no evidence that Defendant acted maliciously or in bad faith when it failed to properly serve the brief on Plaintiffs. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, (1991) (describing court's inherent power to award attorney's fees as sanction when "a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'" (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975))); *United States v. Labelle*, No. 11-14034, 2012 WL 1890915, at *1 (E.D. Mich. May 24, 2012). Upon being alerted to the service error, Defendant admitted it, corrected it, and even ensured that a subsequently filed document that suffered from the same infirmity [200] was also sent to Plaintiffs in hard copy. See [203]. Defendant's prompt and candid response to its service error suggests to the Court that Defendant did not by its improper service intend to prejudice Plaintiffs or deceive the Court. And, as discussed above, there is also no reason to conclude that Plaintiffs (or the Court) were in

fact prejudiced or deceived by Defendant's "oversight." Defendant's brief [195] will remain on the record, and Plaintiffs' joint motion to strike it [201] is denied.

The Court for these same reasons denies Plaintiffs' joint motion for sanctions [208], which seeks to penalize Defendant for its assertion that service of [205] on Plaintiffs was effectuated "via the court's ECF system and via U.S. Mail, postage prepaid." Plaintiffs do not dispute that they were appropriately served via U.S. Mail, which is a service method countenanced by Fed. R. Civ. P. 5(b)(2)(C); they take issue with Defendant's representation that they were also served "via the court's ECF system." Defendant may well believe that Plaintiff Almy at least is receiving documents via CM/ECF in light of Docket Entry 121, in which the Court directed the Clerk to "provide notice by mail and electronic notification to Robert T. Almy at [Almy's e-mail address]." Even if that is not the case, the Court is not inclined to impose sanctions for what seems to have been a harmless and minor drafting error. This small error, which, like the service error appears to have been the product of carelessness rather than bad faith, does not materially "taint [] the integrity of the judicial process," [208], or indeed affect Plaintiffs, their case, or the Court in any way. The Court is therefore inclined to overlook it. *Cf.* Fed. R. Civ. P. 61; *Russell v. City of Milwaukee*, 338 F.3d 662, 666 (7th Cir. 2003) ("Certainly, if a paper filed with the court does not contain the required certificate of service, a court may disregard it. Yet, a court is not obligated to disregard to the paper if it finds by other evidence that the paper was in fact served by the parties." (citations omitted)); *F.D.I.C. v. David Appraisals, Inc.*, No. 6:11-cv-220-Orl-19GJK, 2012 WL 252835, at *3 (M.D. Fla. Jan. 26, 2012) (overlooking obvious error in certificate of service). The Court cautions Defendant to more carefully proofread its submissions and believes this warning alone will prove sufficient to deter similar infractions in the future.

## B.     Motion for Reconsideration

Because Plaintiff Almy has moved for reconsideration of an interlocutory order before the Court has finished with his case, his motion is governed by Federal Rule of Civil Procedure 54(b):

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Under Rule 54(b), the Court may exercise its inherent authority to reconsider the interlocutory order with which Plaintiff Almy takes issue. See *Partmar Corp. v. Paramount Pictures Theatres Corp.*, 347 U.S. 89, 100 (1954); *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). It is well established, however, that "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (quotation omitted). In regard to the "manifest error" prong, the Seventh Circuit has explained that a motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990); see also *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir.2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)); *Wiegel v. Stork Craft Mfg., Inc.*, No. 09-cv-7417, 2012 WL 2130910, at *2 (N.D.Ill. June 6, 2012) ("Reconsideration is not appropriate where a party seeks to raise arguments that

14

could have been raised in the original briefing."). And with respect to newly discovered evidence, "the moving party must show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered or produced such evidence [during the pendency of the motion]." *Caisse Nationale*, 90 F.3d at 1269 (quotation omitted; alteration in original).

Plaintiff Almy's lengthy motion for reconsideration – which exceeds the page limits prescribed by L.R. 7.1 by twenty pages – contends that the Court's previous opinion concluding that the Secretary has jurisdiction to regulate the qualifications and maximum hours of service of school bus drivers is rife with manifest error and disregard for controlling law.[5] In addition to expanding upon arguments that his former counsel raised in connection with the first round of summary judgment briefing, Plaintiff Almy raises a bevy of new arguments that he contends he was unable to assert in the first instance because of his former counsel's alleged mishandling of the case. As the Court explained in an earlier minute order [104], it "has not found any reason to question [former counsel's] conduct in this case – either on legal or ethical grounds." The attacks on former counsel contained in Plaintiff Almy's motion for reconsideration have not convinced the Court otherwise. To the extent that Plaintiff Almy asserts that he "has not yet been heard on any of the issues," [190 at 3], the Court notes that Plaintiff Almy has had ample opportunities to submit his arguments to the Court and has consistently availed himself of those opportunities, including the instant motion for reconsideration. The Court is nonetheless cognizant of his *pro se* status and contentions that he was unable to present his desired arguments during the initial round of summary judgment briefing because of "a deep-seated disagreement between Almy and his counsel over the conduct of this litigation." [104 at 2]. The Court therefore endeavors to

---

[5] It also inappropriately lampoons Defendant's summary judgment briefing and its counsel's professionalism and candor.

address Plaintiff Almy's arguments even though they do not implicate any new evidence or legal developments. See *Ortiz v. City of Chi.*, No. 09-cv-2636, 2011 WL 1897187, at *3 (N.D. Ill. May 18, 2011) ("[I]t is within the Court's discretion to allow them to raise this new argument in a motion for reconsideration."). Consistent with the Seventh Circuit case law cited above, however, the Court is not persuaded that Plaintiff Almy has "an entitlement to be heard *de novo* on all issues," [190 at 35], and will grant Plaintiff Almy's motion only if he has demonstrated a manifest error in the Court's prior ruling. In performing this analysis, the Court keeps in mind that "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments." *Caisse Nationale*, 90 F.3d at 1270.

Plaintiff Almy first contends that the Court's prior judgment is void because the Court did not begin its analysis of the pertinent statutory language with an evaluation of its "plain and ordinary meaning." [190 ¶¶ 16-18]. A judgment is void only if the court which rendered it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process of law." *O'Rourke Bros., Inc. v. Nesbitt Burns, Inc.*, 201 F.3d 948, 951 (7th Cir. 2000). "A void judgment is not synonymous with an erroneous judgment." *Id.* Whether the Court used the proper method to interpret a statute is a question of error, not of jurisdiction or due process. In any event, Plaintiff Almy has not persuaded the Court that its interpretative method was manifestly erroneous, or in "wholesale disregard" of controlling precedent. *Oto*, 224 F.3d at 606. The Court examined the text of the statutory scheme at issue, see [77 at 6], considered the alternative interpretations proposed by the parties, see [77 at 7-8], and interpreted the statute in light of the broader context of statutory and existing case law. See [77 at 7-11]. This procedure was in accordance with the law as prescribed by the Supreme Court and Seventh Circuit. See, *e.g.*, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of

statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); *Smith v. Zachary*, 255 F.3d 446, 448 (7th Cir. 2001) ("[T]he meaning of statutory language, plain or not, depends on context. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

Plaintiff Almy also disagrees with the Court's ultimate interpretation of the statutory scheme. The Court concluded that 49 U.S.C. § 13506(a)(1), which provides that "Neither the Secretary nor the Board has jurisdiction under this part over – a motor vehicle transporting only school children and teachers to or from school," does not deprive the Secretary of jurisdiction to regulate the qualifications and maximum hours of service of school bus drivers under 49 U.S.C. § 31502. Plaintiff Almy's former counsel advanced [60 at 4] – and the Court rejected – the general argument that 49 U.S.C. § 13506(a)(1) by its plain terms entirely divests the Secretary of jurisdiction over school bus drivers. Plaintiff Almy now advances a more detailed version of that same argument, namely that the plain meaning of the phrase "under this part" [190 ¶ 23] in 49 U.S.C. § 13506(a)(1) renders school bus drivers entirely exempt from the Secretary's jurisdiction.

As before, the Court finds this argument wanting. As the Second Circuit explained in *Bilyou v. Dutchess Beer Distributors*, 300 F.3d 217, 226 (2d Cir. 2002), "Section [13506] has no bearing on the Secretary's power, as described in 29 U.S.C. § 213(b)(1), 'to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49.' Section 31502 falls under a different part of Title 49. It falls in Part B of Subtitle VI relating to 'Motor Vehicle and Driver Programs,'" not Part B of Subtitle IV. Plaintiff Almy's reliance on

17

the language "under this part" is thus unavailing.[6] See also *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1233-34 (11th Cir. 2009). Moreover, Plaintiff Almy discounts the remaining plain language of both 49 U.S.C. § 31502 and 49 U.S.C. § 13506(a)(1), which further suggests that the latter does not operate to limit the former. Section 31502 applies to all "transportation described in sections 13501 and 13502" of title 49, 49 U.S.C. § 31502(a)(1), and invests the Secretary with the power to "prescribe requirements for – qualifications and maximum hours of service of employees of" motor carriers and motor private carriers. 49 U.S.C. § 31502(b). The plain language of 49 U.S.C. § 31502 does not reference any exemptions to § 13501, such as § 13506(a)(1), which lends support to the Court's interpretation of the "under this part" language in § 13506(a)(1). Additionally, the plain language of 49 U.S.C. § 13506(a)(1) refers to "motor vehicles transporting only school children and teachers to or from school," not to the individuals driving them (*i.e.*, school bus drivers like Plaintiffs) or the motor carriers operating them (*i.e.* Defendant), which also supports the Court's conclusion that "§ 13506 relates only to economic regulation," [77 at 11], such as insurance and bonding requirements, and not the qualifications or hours of service of drivers. See *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 226 (2d Cir. 2002).

Indeed, regulations issued by the Department of Transportation define "exempt motor carriers" as those "engaged in transportation exempt from *economic regulation* by the Federal Motor Carrier Safety Administration (FMCSA) under 49 U.S.C. § 13506," 49 C.F.R. § 390.5, and emphasize that "'[e]xempt motor carriers' are subject to the safety regulations set forth in this subchapter." *Id.* (emphasis added). Although most "school bus operations" as defined in 49

---

[6] Plaintiff Almy's argument about the "commercial zone exemption," 49 U.S.C. § 13506(b)(1), [190 ¶ 34], fails for the same reason. The Court also notes that the prefatory language to the commercial zone exemption states that it is applicable "[e]xcept to the extent the Secretary or Board  * * *  finds it necessary to exercise jurisdiction," which strongly suggests that the Secretary retains jurisdiction notwithstanding the exemption.

C.F.R. § 390.5 are excepted from many (but not all) of the Secretary's safety regulations, see 49 C.F.R. § 390.3(f)(1), this exception does not deprive the Secretary of the power to regulate the qualifications and maximum hours of service of school bus drivers. For instance, the Secretary in fact regulates, pursuant to the authority granted him under 49 U.S.C. § 31502 and under the umbrella of the "Federal Motor Carrier Safety Regulations," the qualifications required to obtain a school bus endorsement for a commercial driver's license. See 49 C.F.R. § 383.123. Pursuant to the same authority, the Secretary also regulates alcohol and controlled substance testing for school bus drivers. See 49 C.F.R. §§ 382.101, 382.103(c); [54 ¶ 8]. Even though school bus drivers may not be subject to all of the Secretary's safety regulations, this exception merely indicates that the Secretary is choosing not to exercise its power over school bus drivers in certain contexts at this time. See *Morris v. McComb*, 332 U.S. 422, 434 (1947) ("[I]t is the existence of that power (rather than the precise terms of the requirements actually established by the Commission in the exercise of that power) that Congress has made the test as to whether or not § 7 of the Fair Labor Standards Act is applicable to these employees."); *Bilyou*, 300 F.3d at 229 ("Courts have consistently held that the § 213(b)(1) exemption to § 207 applies regardless whether the Secretary of Transportation has exercised his authority to regulate a particular employee or employer."); *Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 273 (S.D.N.Y. 2008); *Jones v. Centurion Inv. Assocs., Inc.*, 268 F. Supp. 2d 1004, 1008-09 (N.D. Ill. 2003) ("Significantly, the DOT retains its jurisdiction over the employees within the scope of its authority regardless of whether it has chosen to exercise its regulatory authority, and the overtime exemption applies to such employees despite the lack of DOT regulations."); see also C.F.R. Part 390 (noting authority for enactment derived in part from 49 U.S.C. § 31502, which

empowers the Secretary to "prescribe requirements for qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier").[7]

To the extent that these regulations apply, Plaintiff Almy contends that they are invalid or arbitrary because they conflict with the plain text of 49 U.S.C. § 13506(a)(1) and were enacted without regard for Section 204(a) of the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"). See [190 ¶¶ 25-29]. The Court does not agree. Plaintiff Almy has not presented any support for his contention that the Federal Motor Carrier Safety Administration – which is an agent of the Secretary, not a substitute or replacement for him, see 49 U.S.C. § 113; contra [190 ¶ 20]; [202 ¶ G] – has ignored or acted in disregard of § 204(a), the savings provision of the ICCTA. Plaintiff Almy's invocation of Section 4007(d) of the Transportation Equity Act for the 21st Century is equally unavailing. Section 4007 of that Act amended 49 U.S.C. § 31315, a provision not at issue here. Moreover, subsection (d) provides that states may not enforce laws or regulations in a manner inconsistent with a waiver issued by the Secretary; this has no bearing on whether the Federal Motor Carrier Safety Administration acted arbitrarily or whether the Secretary has jurisdiction over school bus drivers.

Plaintiff Almy is correct, however, that the current version of 49 U.S.C. § 13506(a)(1), unlike its predecessor, former 49 U.S.C. § 303(b)(1), does not expressly state that the Secretary retains jurisdiction over the qualifications and maximum hours of service of school bus drivers. [190 ¶ 24]. The fact that this language is absent from the current version does not, as Plaintiff Almy suggests, necessarily imply that Congress intended to permanently and entirely remove school bus operations from the Secretary's jurisdiction. The amended language was enacted as

---

[7] The Court notes that school bus drivers are not as a group excluded from the Secretary's regulations governing hours of service. There may be some situations in which some school bus drivers are exempt from these regulations, *e.g.*, 49 C.F.R. § 395.1(e), and Plaintiffs Almy and Rice may well be among them, but the regulations by their terms are applicable to all drivers of commercial motor vehicles.

part of a broad statutory overhaul, not a line-edit that plainly indicated Congress's intent to wholly remove school bus operations from the Secretary's jurisdiction. As the *Walters* court explained, "the elimination of that language likely reflects the fact that the separation of the various sections of the [Motor Carrier Act] rendered the reference to Section 204 meaningless." *Walters*, 575 F.3d at 1233. The legislative history accompanying the revisions is consistent with the conclusion that Congress did not intend to broaden the exemption by removing the explicit language. See H.R. Rep. No.l 96-1069 at 19 (1980) ("Under the current law, certain types of transportation are exempt from regulation by the Interstate Commerce Commission. This section of the bill expands the list of types of motor carrier transportation exempt from *economic regulation*." (emphasis added)).

The Court did previously consider – and find persuasive – *Bilyou v. Dutchess Beer Distributors*, 300 F.3d 217 (2d Cir. 2002), and *Dauphin v. Chestnut Ridge Transportation, Inc.*, 544 F. Supp. 2d 266 (S.D.N.Y. 2008). Plaintiff Almy attacks the correctness and validity of both of these decisions, in the context of arguing that Defendant's "bad faith" should bar the application of the motor carrier exemption to the FLSA. See [190 ¶¶ 30-33]. He essentially contends that the Secretary lacks jurisdiction because Defendant allegedly – Plaintiff Almy presents no evidence aside from his own "certification" – failed to obtain and maintain proper interstate operating authority from the Secretary. See [190 ¶¶ 19-20, 30-33]. The Court is not persuaded by this circular argument. The general jurisdictional grant in 49 U.S.C. § 13501 gives the Secretary authority over "transportation by motor carrier and the procurement of that transportation" when cargo or passengers are transported by motor carrier across state lines, regardless of whether the motor carrier has properly registered or has violated registration regulations. Section 13901 is not to the contrary; it provides only that those who are not

registered may not provide interstate transportation as a motor carrier and does not divest the Secretary of jurisdiction over those who have not properly registered. See 49 U.S.C. § 13901; *cf.* 49 U.S.C. § 14901 (imposing civil penalties on those who do not comply with 49 U.S.C. § 13901). The Court continues to find *Bilyou*'s treatment of this issue persuasive. See *Bilyou*, 300 F.3d at 229. The Court also finds that *Bilyou* does not conflict with *Baird v. Wagoner Transportation Co.*, 425 F.2d 407 (6th Cir. 1970), *Goldberg v. Faber Industries*, 291 F.2d 232 (7th Cir. 1961), *Marshall v. Aksland*, 631 F.2d 600 (9th Cir. 1980), or *Carolina Casualty Insurance Co. v. Yeates*, 584 F.3d 868 (10th Cir. 2009) (en banc), none of which is on point in any event.

*Baird*, *Goldberg*, and *Marshall* all addressed whether a particular company or employee engaged in "interstate commerce" so as to come within the jurisdiction of the Secretary. (As noted above, this Court has not previously considered this issue in this case.) *Baird* held that a trucking company that did not engage in interstate commerce for five years notwithstanding its possession of a license to do so was not within the jurisdiction of the Secretary because the company's activities had no direct effect on the safety of motor vehicle operations in interstate commerce. See *Baird*, 425 F.2d at 412-13. *Goldberg* held that the activities of individual employees were crucial to the determination of whether they were subject to the FLSA exemption. See *Goldberg*, 291 F.2d at 235. And *Marshall* concluded that a carrier that held itself out as an interstate transporter in bad faith – *i.e.*, only to take advantage of the FLSA exemption, with no intent or ability to actually provide interstate transportation – would not be subject to the Secretary's jurisdiction. See *Marshall*, 631 F.2d at 603. None of these cases addresses whether the Secretary's own disinclination to exercise his power deprives him of that power, nor do they hold that a motor carrier must comply with all regulations to confer jurisdiction upon the

Secretary. They are thus not in conflict with the portion of *Bilyou* with which Plaintiff Almy takes issue, nor do they prove *Bilyou*'s reasoning invalid. The same is true of *Carolina Casualty Insurance Co.*, which concerns insurance coverage and mentions in passing that "a commercial motor carrier may operate only if registered to do so." *Carolina Cas. Ins. Co.*, 584 F.3d at 874. This dicta is in accord with 49 U.S.C. § 13901, which, as discussed above, does not bear on the narrower questions of whether the Secretary has jurisdiction over a group of individuals (school bus drivers), a particular motor carrier (Defendant), or particular individuals (Plaintiffs Almy and Rice).

Nor are *Bilyou* or *Dauphin* invalid as creating statutory "surplusage." [190 ¶ 33]. Plaintiff Almy contends that *Dauphin*'s interpretation of 49 U.S.C. § 13506(a)(1) – that it applies only to the Secretary's economic and licensing authority – renders the provision useless in light of 49 U.S.C. §§ 13902(a)(1)(C) & 31138(e)(1). These provisions do not serve the same function as the exemption in § 13506, however. Section 13902(a)(1)(C) provides that

> the Secretary shall register a person to provide transportation subject to jurisdiction under subchapter I of chapter 135 of this title as a motor carrier if the Secretary finds that person is willing and able to comply with  * * *  the accessibility requirements established by the Secretary under subpart H of part 37 of title 49, Code of Federal Regulations, or such successor regulations to those accessibility requirements as the Secretary may issue, for transportation provided by an over-the-road bus.

That is, a person desiring to register a "bus characterized by an elevated passenger deck located over a baggage compartment," 49 C.F.R. § 37.3, must certify that he is willing and able to comply with regulations governing the accessibility of these vehicles to disabled individuals. This clearly is not the same as *Dauphin*'s and *Bilyou*'s interpretations of the exemptions in 49 U.S.C. §§ 13505 & 13506. Section 31138(e)(1) is slightly more on point: it exempts school buses from regulations concerning minimum amounts of insurance coverage. Yet it does not

deprive the Secretary of authority to regulate qualifications and maximum hours of service but rather prevents him only from "prescrib[ing] regulations to require minimum levels of financial responsibility." 49 U.S.C. § 31138(a)(1). *Bilyou* and *Dauphin* also do not render useless or duplicative 49 U.S.C. §§ 13501 & 13901, which do not, as Plaintiff Almy suggests, see [190 ¶ 33], create a circular regime in which the Secretary's jurisdiction depends on whether operating authority was properly obtained or maintained in accordance with regulations promulgated pursuant to the Secretary's jurisdiction.

Plaintiff Almy's remaining arguments also must be rejected. In paragraph 35, he contends that Defendant cannot be an interstate motor carrier for purposes of the motor carrier exemption because its seniority system precludes its drivers from sharing interstate work indiscriminately. Yet his accurate contention in paragraph 36 – that the applicability of the motor carrier exemption "depends upon the activities of individual employees," *Goldberg*, 291 F.2d at 235 – demonstrates the futility of this argument. The motor carrier exemption "applies to employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act, and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." [77 at 14]; see also 29 C.F.R. § 782.2(a). Whether other of Defendant's employees indiscriminately shared interstate routes or engaged in interstate transportation is not dispositive of whether Plaintiffs Almy and Rice engaged in interstate transportation. So long as Defendant comes within the jurisdiction of the Secretary, which this Court continues to conclude is the case notwithstanding Plaintiff Almy's

arguments to the contrary, the only real question presented is whether these Plaintiffs, not all or some of their coworkers, engaged in interstate transportation of passengers.[8]

Plaintiff Almy's final argument aimed at the contents of the Court's prior ruling is the unsupported assertion that "Defendant waived any claims to the Motor Carrier Exemption when it agreed to pay overtime beginning on or about February 3, 2008." [190 ¶ 37].[9] This is an interesting argument, but without some authority supporting it the Court is unable to conclude that it committed manifest error by neglecting to address it in the September 11, 2009 opinion.

Although Plaintiff Almy has marshaled an array of arguments in support of his position, these arguments neither individually nor collectively demonstrate that the Court committed manifest error by following the teachings of the Second and Eleventh Circuits and holding that the Secretary has jurisdiction to regulate the qualifications and maximum hours of service of school bus drivers. The Court therefore respectfully denies Plaintiff Almy's motion for reconsideration [190].

III.     **Motion for Summary Judgment**

    A.     **Plaintiffs' Motion for Leave to File a Further Response**

Defendant has, for a second time, moved for summary judgment on all three counts of Plaintiffs' complaint. The Court has exercised its discretion to permit a second attempt at summary judgment in this case because, by agreement of counsel and the Court, the first

---

[8] Plaintiff Almy does not challenge the Court's previous determination that his (and Plaintiff Rice's) actions "affected the safety of operation of motor vehicles on the public highways." [77 at 15].

[9] Plaintiff Almy's arguments in the second paragraph numbered 29 and in paragraphs 38-49 do not implicate the Court's earlier ruling, which did not address the questions of Plaintiffs' participation in interstate commerce, Defendant's compliance with the FLSA, or the parameters of the motor carrier exemption to the IMWL. Since it did not "consider" these issues in the first instance, the Court declines to "reconsider" them in the context of Plaintiff Almy's motion for reconsideration. As may be appropriate, the Court will consider them as part of Plaintiff Almy's opposition to Defendant's summary judgment motion.

summary judgment ruling addressed only the specific jurisdiction issue discussed above. In this opinion, the Court addresses several issues previously left open and on which discovery has now been taken. See *Whitford v. Boglino,* 63 F.3d 527, 530 (7th Cir.1995); see also *Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir.2002). The parties have fully briefed the summary judgment motion.

Plaintiffs additionally have moved for leave to file a further response in opposition to the motion. [204]. The decision whether to grant a motion for leave to file a surreply is within the Court's discretion. See *Johnny Blastoff, Inc. v. L.A. Rams*, 188 F.3d 427, 439 (7th Cir. 1999). In some instances, allowing the filing of a surreply "vouchsafes the aggrieved party's right to be heard and provides the court with the information necessary to make an informed decision." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 329 (N.D. Ill. 2005); see also *Franek v. Walmart Stores, Inc.*, Nos. 08-cv-0058 & 08-cv-1313, 2009 WL 674269, at *19 n. 14 (N.D. Ill. Mar.13, 2009) (recognizing that a surreply might be appropriate "when a moving party 'sandbags' an adversary by raising new arguments in a reply brief"). However, denial of a motion to file a surreply is appropriate when the movant has had the opportunity to thoroughly brief the issues. See *Destiny Health, Inc.* v. *Conn. Gen. Life Ins. Co.*, 741 F. Supp. 2d 901, 911 (N.D. Ill. 2010). Moreover, there simply is no need for a surreply when "[e]ach brief in the sequence on the motion fairly responded to the arguments in the brief that preceded it." See *Franek*, 2009 WL 674269, at *19 n. 14.

Here, Defendant's reply brief did not raise new arguments but was accompanied by exhibits not previously submitted or discussed. The Court grants Plaintiffs' motion for leave to file a further response [204] to afford them the opportunity to respond to Defendant's belatedly

produced exhibits. The Court will consider Plaintiffs' surreply in ruling on Defendant's motion for summary judgment.

### B.      Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

### C.      Analysis

#### 1.      Federal Claim (Count I)

Count I of Plaintiffs' complaint alleges that they were not paid overtime as required by the FLSA. The FLSA requires employers to pay employees one and one-half times their normal

hourly wage for each hour they work in excess of forty hours per week. 29 U.S.C. § 207(a)(1).

The question raised by Defendant's renewed motion for summary judgment is whether Plaintiffs

are covered by the overtime mandate of the FLSA or whether Defendant can avail itself of an

exemption to that mandate. (It is undisputed that Defendant did not pay Plaintiffs overtime prior

to February 3, 2008.) Under the motor carrier or MCA exemption that Defendant attempts to

invoke, the FLSA's overtime provisions do not apply to employees over whom "the Secretary of

Transportation has power to establish qualifications and maximum hours of service pursuant to

the provisions of [49 U.S.C. § 13502]" of the Motor Carrier Act. 29 U.S.C. § 213(b)(1); *Johnson*

*v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 661 (7th Cir. 2011). The applicability of the MCA

exemption "depends both on the class to which his employer belongs and on the class of work

involved in the employee's job." 29 C.F.R. § 782.2(a).  The exemption applies

> to those classes of employees * * * who: (1) Are employed by carriers whose
> transportation of passengers or property by motor vehicle is subject to [the
> Secretary's] jurisdiction under  * * * the Motor Carrier Act * * *, and (2) engage
> in activities of a character directly affecting the safety of operation of motor
> vehicles in the transportation on the public highways of passengers or property in
> interstate or foreign commerce within the meaning of the Motor Carrier Act.

*Id.* Thus, Defendant, which bears the burden of showing that the exemption applies, see *Johnson*,

651 F.3d at 661, must make a three-part showing: (1) that Plaintiffs are employed by a carrier

whose transportation of passengers is subject to the Secretary's jurisdiction under the Motor

Carrier Act; (2) that Plaintiffs engage in activities of a character directly affecting the safety of

operation of motor vehicles in the transportation on the public highways of passengers; and (3)

that Plaintiffs transported passengers in interstate commerce within the meaning of the Motor

Carrier Act.

The Court previously determined – and has declined to reconsider – that the Secretary of

Transportation has the authority to regulate the qualifications and maximum hours of service of

school bus drivers and that Defendant is subject to the Secretary's jurisdiction. See [77 at 14]. The Court also determined that Plaintiffs, who are both employed as drivers, affected the safety of operation of motor vehicles on the public highways. See [77 at 15]; *McGee v. Corp. Express Delivery Sys.*, No. 01-cv-1245, 2003 22757757, at *4 (N.D. Ill. Nov. 20, 2003) (collecting cases). This leaves Defendants to prove that Plaintiffs' activities as drivers involved the interstate transportation of passengers within the meaning of the Motor Carrier Act. Defendants have asserted that no genuine issue of fact remains on this dispositive issue.

The Court agrees. "Highway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce" within the meaning of the Motor Carrier Act. 29 C.F.R. § 782.7(b)(1). Defendant has presented uncontroverted evidence that Plaintiff Almy transported passengers across the Illinois-Indiana state line as part of his regular bus route, see Almy Dep. 23:10-21, 31-35; [54 ¶ 13]; [197-A ¶ 14], and in connection with chartered routes. [54 ¶ 13]; [186-3]. Defendant has also presented uncontroverted evidence that Plaintiff Rice transported passengers across the Illinois-Indiana border as part of her regular and substitute bus routes, see Rice Dep. 37:1-38:18, 50:7-11, and in connection with chartered routes. [186-3]. Plaintiffs have not presented any admissible evidence from which the Court can infer that they engaged in interstate commerce so infrequently as to remove them from the ambit of the exemption, see 29 C.F.R. § 782.2(b)(3), and "a nonmoving party cannot defeat a motion for summary judgment with bare allegations." *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.2d 681, 685 (7th Cir. 2008). Without any evidence that Plaintiff Almy or Plaintiff Rice did not regularly transport passengers in interstate commerce, the Court cannot conclude that any factual issue remains on the FLSA claim: Defendants are entitled to the exemption. The Court therefore grants Defendant's motion for summary judgment as to Count I.

### 2.    State-Law Claims (Counts II & III)

### A.    Section 301 Preemption

The Court's jurisdiction over Plaintiffs' FLSA claim was solely based on the federal question statute, 28 U.S.C. § 1331, which grants the Court original jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." (There is not complete diversity of citizenship among the parties – Plaintiff Rice and Defendant are both citizens of Illinois.) Generally, the Court's jurisdiction over state-law claims like those asserted in Counts II and III rests upon 28 U.S.C. § 1367(a), which grants the Court "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United Constitution." When the Court has only supplemental jurisdiction over claims, it may decline to exercise its jurisdiction if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Indeed, "the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims" "[w]hen all federal claims in a suit in federal court are dismissed before trial." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010); see also 28 U.S.C. § 1367(c)(3); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). This presumption may not be applicable here, however, because Plaintiffs' state-law claims may be completely preempted and therefore within the Court's original jurisdiction.

Defendant has consistently argued, since it answered Plaintiffs' complaint, see [13 at 7], that Plaintiffs' IWPCA claim, at least, is completely preempted by the Labor Management

Relations Act ("LMRA") and the Federal Arbitration Act.[10] Complete preemption is one of the few exceptions to the general rule that "arising-under jurisdiction depends on the claim for relief rather than potential defenses." *Bennett v. Sw. Airlines Co.*, 493 F.3d 762, 763 (7th Cir. 2007) (per curiam); see also *Hughes v. United Air Lines, Inc.*, 634 F.3d 391, 393 (7th Cir. 2011) ("'[C]omplete preemption' is not a defense. It means that the claim itself arises under federal law."); *In re Repository Techs., Inc.*, 601 F.3d 710, 722-23 (7th Cir. 2010) ("Complete preemption * * * creates an exception to the rule that courts look only to the plaintiff's well-pleaded complaint to determine whether federal jurisdiction exists. If the complaint pleads a state-law claim that is completely preempted by federal law, the claim is removable to federal court."); *Baker v. Kingsley*, 387 F.3d 649, 657 (7th Cir. 2004) ("[W]e must review the district court's preemption decision to determine whether it had original jurisdiction over the Illinois Wage Act claim. If the claim is preempted by § 301 of the LMRA, then it was within the district court's original jurisdiction * * * *"). "Under this jurisdictional doctrine, certain federal statutes have such extraordinary pre-emptive power' that they 'convert[ ] an ordinary state common law complaint into one stating a federal claim." *In re Repository Techs., Inc.*, 601 F.3d at 722 (quotations omitted). Section 301 of the LMRA is one of very few federal statutes imbued with this power, and the Federal Arbitration Act is not among them. See *id.* Thus, to the extent that

---

[10] In its answer to Plaintiffs' complaint, Defendant asserted as an affirmative defense that "Plaintiff's claims are pre-empted by the National Labor Relations Act (29 U.S.C. § 151 *et. seq.*) and the Federal Arbitration Act (9 U.S.C. § 1 *et. seq.*) insofar as they raise issues cognizant under Defendant's contract with Teamsters Local 142 and the dispute resolution procedures in that contract." [13 at 7] (all errors in original). Defendant appears to have abandoned its contention that the IWML claim is preempted; in its summary judgment briefing, Defendant contends only that Plaintiffs' IWPCA claim is "pre-empted by the National Labor Relations Act (29 U.S.C. § 151 *et. seq.*) and the Federal Arbitration Act (9 U.S.C. § 1 *et. seq.*)," [184 at 10], and refers exclusively to the National Labor Relations Act or NLRA. See [184 at 10-11]; [200 at 3-8]. The Court understands Defendant to be invoking Section 301 of the Labor Management Relations Act (29 U.S.C. § 185), as (1) the National Labor Relations Act does not contain a Section 301 and (2) the case law Defendant has cited exclusively implicates Section 301 of the Labor Management Relations Act. Plaintiffs appear to have understood Defendant's argument the same way, as they both address Section 301 preemption and state that "preemption pursuant to § 301 of the LMRA does not apply to this case." [196 at 4]; [199 at 20].

Defendant argues that the Federal Arbitration Act preempts Plaintiffs' claims, this argument is a standard affirmative defense that does not bear on the Court's jurisdiction, see *Bennett*, 493 F.3d at 763; see also *Kingstad v. State Bar of Wis.*, 622 F.3d 708, 712 n.3 (7th Cir. 2010) (noting that the Federal Arbitration Act "is not an independent source of jurisdiction"), and the Court does not consider it (or any potential significance of 9 U.S.C. § 1) at this juncture. If either[11] of Plaintiffs' state-law claims is pre-empted by Section 301 of the LMRA, however, it will fall within the Court's original jurisdiction and must be resolved in this forum. See *Baker*, 387 F.3d at 656-57 ("It is an abuse of discretion for a district court to remand a federal claim that is properly before it.").

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees * * * may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). "The Supreme Court has construed the preemptive force of § 301 to be so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Baker*, 387 F.3d at 657 (quotation omitted). The Supreme Court has cautioned, however, that "not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). Whether Section 301 operates to preempt a particular state-law claim requires "case-by-case factual analysis." *In re Bentz Metal Prods. Co.*, 253 F.3d 283, 285 (7th Cir. 2001) (en banc). "To determine whether a state-law claim is pre-

---

[11] Although Defendant has apparently abandoned its argument that Plaintiffs' IMWL claim is preempted by the Section 301 of the LMRA, the Court considers the preemption issue because it bears directly on the Court's jurisdiction. See *Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986) ("[O]nce the district judge has reason to believe that there is a serious jurisdictional issue, he is obliged to resolve it before proceeding to the merits even if the defendant, whether as a matter of indolence or of strategy, does not press the issue.").

empted, we must look at the legal character of the claim: a question of state law, entirely independent of any understanding embodied in the collective bargaining agreement, may go forward as a state-law claim, whereas a claim, the resolution of which is sufficiently dependent on an interpretation of the [collective bargaining agreement], will be preempted." *Baker*, 387 F.3d at 657 (quotations and citations omitted). That is, "[i]f the resolution of a state law claim depends upon the meaning of, or requires the interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute." *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir. 1996). But "[i]f a state-law claim requires reference to, but not interpretation of, a collective bargaining agreement, the claim is not preempted." *Baker*, 387 F.3d at 657.

Plaintiffs allege in Count II of their complaint that Defendant violated the IMWL by failing to pay them overtime wages for time worked in excess of forty hours per week. There is no dispute that Plaintiffs were not paid overtime wages until around February 3, 2008. Indeed, the 2005-2008 CBA expressly provides that "All Employees who work in excess of (40) hours in any one week shall be paid their regular hourly rate for each hour after forty (40) hours." [186-6 ¶ 11.6]. Since "[n]othing that labor and management put in a collective bargaining agreement exempts them from state laws of general application," *Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427, 430 (7th Cir. 2010), the foremost question presented by Plaintiffs' IMWL claim is whether Plaintiffs are entitled to overtime pay under the IMWL. The follow-on question, should the first be answered in the affirmative, is how much Plaintiffs should have been compensated. The first question does not depend in any way on the terms of the CBA; it can be answered only by looking to Illinois state law. Resolution of the second question may require the Court to refer to the 2005-2008 CBA, which provides tables of wage rates for charters, see [186-6 at 16 ¶ 12.2],

and regular bus routes, see [186-6 at 20 ¶ 15.1], but would not require the Court to interpret or otherwise delve further into the document. Plaintiffs' IMWL claim therefore is not completely preempted by Section 301, see *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994) ("[T]he mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301."), and is before this Court pursuant to the grant of supplemental jurisdiction in 28 U.S.C. § 1367(a).

In Count III, Plaintiffs allege that Defendant violated the IWPCA by failing to pay them for all the time that they worked. Specifically, they allege that they were not compensated for all the time that they spent "deadheading" on charter routes and performing pre- and post-trip activities such as inspecting and refueling their buses. *E.g.*, [197 Ex. A ¶ 12] ("Kickert only allotted 10 minutes time to complete the pre-trip inspection and pull away from Kickert's property. However, barring complications a pre-trip inspection requires 15-20 minutes to complete."). Defendant, which "acknowledges that drivers are entitled to pay for all hours worked," and even that the 2005-2008 CBA "mandates that drivers be paid for all hours worked," contends that Plaintiffs "have been paid for all hours worked." [200 at 6]. Defendant characterizes the claim as "nothing more than a breach of contract claim asserting that Almy and now Rice were not paid all they were entitled do," [200 at 7], and maintains that Plaintiffs should be required to arbitrate their dispute in accordance with the grievance procedures set forth in the CBA. Thus, it asserts that Plaintiffs' IWPCA claim is preempted by Section 301 because it "raise[s] issues cognizant under Kickert's contract with Teamsters Local 142 and the dispute resolution procedures in that contract." [184 at 10]. Plaintiffs retort that, as transportation workers, they are exempt from mandatory arbitration, see [199 at 14, 16-17]; that Section 301 preemption "does not arise merely because the subject matter of the state-law claim is also the

subject of a dispute resolution proceeding," [196 at 3]; [199 at 15]; see also [199 at 18]; and that "Defendant has failed to identify anything in [Plaintiffs'] complaint that is 'substantially dependent' upon an analysis of the CBA." [199 at 15]. They also assert that "Count III is based exclusively on state law and alleges no violation of the collective-bargaining agreement (CBA)." [196 at 3]; [199 at 13].

Article XI of the CBA, entitled "Hours of Work," was intended by Teamsters Local 142 and Defendant to "provide a basis for the computation of wages and to set forth all hours of work guaranteed to drivers." [186-6 ¶ 11.1]. It states that Defendant's "pay records, practices and procedures shall govern the payment of all wages," [186-6 ¶ 11.1], and contains the following "Guarantee of Minimum Hours":

> The Company shall pay an Employee a guaranteed minimum of two (2) hours of work a day at the regular rate of hourly pay if that Employee is assigned to a morning route and two (2) hour guarantee for the afternoon route. Where an Employee works less actual hours than he or she is guaranteed, that Employee will receive payment for the amount of hours guaranteed to him or her by the Company. *Where an Employee works more hours than he or she is guaranteed, he or she will receive payment for the actual hours worked.* If an employee declines any work assigned, he will not be entitled to the guarantee for that period.

[186-6 ¶ 11.5] (emphasis added). Article XII of the CBA, governing charters, provides that "Employees working charter trips will be paid the greater of" per-mile or per-hour rates, and further states that under either scenario,

> [I]f the Company charges deadhead mileage to get to the pickup point, the driver will be paid the mileage rate for the deadhead miles charged to the customer. * * * The drop off driver gets a flat rate of one hour's pay or his hourly wage rate, whichever is greater, but not to exceed 50% of the total driver wages for the trip. The drop-off wage is subtracted from the total driver wage for the trip, and the balance is paid to the pick-up driver."

[186-6 ¶ 12.2]

Despite Plaintiffs' assertions to the contrary, their IWPCA claim is at bottom a contention that Defendant violated the terms of these (and possibly other) contractual provisions. In his original complaint, Plaintiff Almy alleged: "Defendant agreed to compensate Plaintiff for his work at the hourly wage rate agreed to by the parties. Defendant failed to pay Plaintiff for all the time he worked in individual work weeks. Defendant violated the IWPCA, 820 ILCS 115/9, by failing to pay Plaintiff for all time he worked." [1 ¶¶ 26-28]. (Plaintiff Rice has since joined this count of Plaintiff Almy's complaint. See [194].) Plaintiff Almy reiterated this allegation in his affidavit opposing summary judgment: "Section 11.5 of the CBA states in unambiguous terms that when I work more than two hours in the morning or afternoon that I will receive payment for all hours worked," [197 Ex. A ¶ 11]; "Base time is in contradiction to Kickert's stated policy in the Driver Handbook to mark time cards with 'the time you return to Kickert's drivers' lounge, (after routes)." [197 Ex. A ¶ 13]; see also [199 at 15 n.28] ("Almy's claims are for not being paid for actual time worked."). Plaintiff Rice has echoed Plaintiff Almy's allegations. See [197 Ex. B ¶¶ 10-11]. These types of contract-related claims are squarely preempted by Section 301.

The result would not be different even if the tenor of Plaintiffs' claim were, as their summary judgment briefing suggests, that Defendant does not consider their various pre- and post-trip tasks "work." See [199 at 14]; [204 ¶ 10] ("The question is whether as a matter of fact the activities are an integral part of the job the employee is asked to perform."). "[T]he meaning of 'work' under the CBA implicates federal contract interpretation, and therefore section 301." *Curry v. Kraft Foods Global, Inc.*, No. 10 C 1288, 2012 WL 104627, at *6 (N.D. Ill. Jan. 12, 2012). Plaintiffs' IWPCA claim is preempted by Section 301, and the Court thus has original jurisdiction over – and must address – Plaintiffs' IWPCA claim.

36

### B.     IWPCA Claim

Because Plaintiffs' IWPCA claim arises under Section 301, it is governed by federal substantive law. This body of law "includes a strong preference for arbitration as a method for resolving labor disputes." *Atchley v. Heritage Cable Vision Assocs., Inc.*, 101 F.3d 495, 501 (7th Cir. 1996). "Federal law governing § 301 claims also includes a general requirement that employees must exhaust grievance and arbitration remedies provided in a collective bargaining agreement before filing suit." *Id.* (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983)); see also *McCoy v. Maytag Corp.*, 495 F.3d 515, 524 (7th Cir. 2007) ("It is well settled that if a CBA establishes a grievance and arbitration procedure for the redress of employee complaints, employees wishing to assert claims based on a CBA must first exhaust the grievance procedure before resorting to a judicial remedy."). When arbitration procedures have not been exhausted, the Court should dismiss the claim. See *id.* at 502.

The CBAs at issue here establish a grievance and arbitration procedure. Article VIII of both CBAs is entitled "Grievance and Arbitration Procedures," [186-6 at 7]; [186-10 at 7], and provides:

> A grievance shall be defined as a claim by an Employee, the Union, or the Company that one party to this Agreement violated or is violating the provisions of a specific section or sections of this Agreement. The provisions of this Article shall set forth the sole and exclusive procedures for the adjustment of any grievance of the Employees or the Union.

[186-6 ¶ 8.1]; [186-10 ¶ 8.1]. Article VIII goes on to set forth a several-step grievance procedure, with arbitration as the final step. See [186-6 ¶¶ 8.2-8.11]; [186-10 ¶¶ 8.2-8.11]. There is no question that the contractual dispute at issue here is within the scope of the CBAs' broadly worded grievance procedures. See *Carpenters Local Union 2832 v. Eggers Indus., Inc.*, No. 11-C-0252, 2011 WL 2784156, at *2-3 (E.D. Wis. July 15, 2011). Plaintiff Almy in fact initiated –

but did not exhaust – the grievance process to redress his concerns. See [197 Ex. A ¶ 6]. There is no evidence that Plaintiff Rice has even attempted to begin the grievance process. This would suggest that the Court should dismiss Plaintiffs' IWPCA claim so that the grievance procedure may move forward.

But before the Court does so, it considers whether Plaintiffs come within one of the "three exceptions in which a court may excuse an employee's failure to exhaust a CBA's grievance and arbitration procedure: (1) if union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; (2) if internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; or (3) if exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim." *McCoy*, 495 F.3d at 524 (quotations and citations omitted). The Court's fact-specific inquiry focuses on whether Plaintiffs have demonstrated that the pursuit of internal remedies is futile. *Hammer v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 178 F.3d 856, 858 (7th Cir. 1999). "It is well-settled, though, that a plaintiff must show that union hostility is so pervasive that it infects every step of the internal appeals process." *Id.*

Plaintiff Almy asserts that Teamsters Local 142 officials have been hostile to his claims, see [199 at 18 & n.32], and has testified that "[t]he union and Mr. Regan in particular refused to respond to phone calls or emails on the status of my grievance." [197 Ex. A ¶ 6]. He has also testified that his "grievance was placed on hold by an agreement between union and Kickert." [197 Ex. A ¶ 6]. This alleged hostility does not clear the high threshold required to excuse Plaintiffs from exhausting their internal remedies. Plaintiff Almy has not "pointed out any evidence which could be construed to impugn the integrity or neutrality" of the union, *Hammer*,

178 F.3d at 859, nor has he suggested that "every step" of the grievance process is compromised by hostility. To the contrary, he asserted in his affidavit that his grievance moved smoothly through the third step of the procedures set forth in the CBA before the union and Defendant agreed to place it on hold. [197 Ex. A ¶ 6]. Moreover, Defendant has expressed a willingness to advance Plaintiff Almy's grievance to the arbitration stage, see [200 at 8], and the Court has been presented no reason to doubt that this will be done promptly and in accordance with the procedures set forth in the CBA. On the record before it, the Court is not persuaded that Plaintiff Almy will not receive a fair hearing or that requiring Plaintiffs to follow the grievance procedures will unreasonably delay their receipt of any relief to which they may be entitled. The Court therefore grants Defendant's motion for summary judgment on Count III.

### C.      IMWL Claim

Plaintiffs' IMWL claim is before the Court pursuant only to the Court's supplemental jurisdiction. In light of the dismissal of Plaintiffs' federal claims, then, the Court must determine whether it should retain jurisdiction over this state-law claim. See 28 U.S.C. 1367(c)(3). Generally, courts relinquish jurisdiction over state-law claims when all federal claims in a suit in federal court are dismissed before trial. See *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). But this general rule is not without exceptions. There are some "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point to federal decision of the state-law claims on the merits," such as cases in which "the statute of limitations has run on the pendent claim, precluding the filing of

a separate suit in state court," "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort," or "it is absolutely clear how the pendent claims can be decided." *Wright v. Assoc. Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

Plaintiffs' IMWL claim falls within the latter category. The Seventh Circuit has instructed that when "the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim there is no use leaving the latter to the state court." *Id.*; see also *Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*, 273 F.3d 722, 731 (7th Cir. 2001). In such instances, "considerations of judicial economy warrant[ ] retention and decision rather than relinquishment of the case to the state court." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). The Court therefore retains jurisdiction over this claim.

Under the IMWL, "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 ½ times the regular rate at which he is employed." 820 Ill. Comp. Stat. 105/4a(1). Plaintiffs contend that Defendant violated this statute by failing to pay them overtime prior to February 3, 2008. But, in light of the Court's ruling that the Secretary of Transportation has jurisdiction over them, the IMWL is not applicable to Plaintiffs. Under the plain language of the statute, Plaintiffs are not "employees" and are thus not entitled to its protections. Section 105/3(d)(7) provides:

> "Employee" includes any individual permitted to work by an employer in an occupation, but does not include any individual permitted to work:
>
> For a motor carrier and with respect to whom the U.S. Secretary of Transportation has the power to establish qualifications and maximum hours of service under the provisions of Title 49 U.S.C. or the State of Illinois under Section 18b-105 (Title 92 of the Illinois Administrative Code, Part 395 – Hours of Service of Drivers) of the Illinois Vehicle Code.

As the Court explained above, and in its previous ruling on the issue [77], the Secretary of Transportation has the power to establish qualifications and maximum hours of service for Plaintiffs. Defendant's motion for summary judgment on Count II is therefore granted.

## IV. Conclusion

For the foregoing reasons, the Court denies Plaintiffs' motion to strike [201]; denies Plaintiffs' motion for sanctions [208]; denies Plaintiff Almy's motion for reconsideration [190]; grants Plaintiffs' joint motion for leave to file a further response to the motion for summary judgment [204]; and grants Defendant's motion for summary judgment [183]. This case is dismissed.

Dated: January 7, 2013

_____
Robert M. Dow, Jr.
United States District Judge